MURDOCK, Judge.
This is a child-custody-modification case. S.J.R., the mother, appeals from a judgment entered by the Elmore Circuit Court awarding custody of the parties’ daughter to F.M.R., the father.
In July 1996, the Elmore Circuit Court entered a -divorce judgment based on an agreement of the parties. The divorce judgment awarded the parties joint legal custody of their daughter, who was born in May 1994. The divorce judgment awarded the mother primary physical custody of the child; it awarded the father visitation with the child every weekend.
In September 1999, the mother filed an “Emergency Motion for Ex Parte Relief’ in the Elmore Circuit Court, seeking to suspend the father’s visitation with the child. The mother’s emergency motion was based upon allegations by the child that the paternal grandfather had sexually abused the child during the father’s visita *354 tion.[1] The trial court entered an ex parte order suspending the father’s visitation, as requested by the mother, and setting the case for a hearing to be held on September 23, 1999. Thereafter, the father filed a written response to the mother’s emergency motion.
A few days after the mother filed her emergency motion, she filed a petition to modify the father’s visitation rights; in that petition she requested that the trial court enter an order terminating the father’s visitation or requiring that his visitation be supervised. The father filed a motion requesting that the trial court appoint a guardian ad litem to represent the child’s interests; that motion was granted. The father also filed a motion requesting that the trial court enter an order “removing” Sharon Bell, a counselor who had been retained by the mother to evaluate the child, as the child’s counselor. The father alleged that Bell had not cooperated with his discovery efforts, that Bell appeared to be biased, and that Bell had ignored allegations of sexual abuse that the child had made against the mother’s fiancé.[2] The father requested that the trial court designate another counselor to examine the child.
In October 1999, after holding a hearing, the trial court entered a pendente lite order maintaining custody of the child in the mother and awarding the father weekend visitation with the child. The trial court ordered the father not to allow other family members around the child; the trial court also ordered the mother not to allow other males around the child unless the mother was also present.
In his answer to the mother’s petition to modify his visitation rights, the father alleged that the Department of Human Resources (“DHR”) had a pending investigation regarding the child’s allegations that she had been sexually abused by the mother’s fiancé, noted that he had not been accused of abusing the child, and requested that the trial court deny the mother’s petition to modify his visitation rights. The father also filed a counterclaim, alleging that a material change in circumstances had occurred since the entry of the divorce judgment. He alleged that the mother had neglected the child, that the mother had hampered the child’s natural development, and that the mother had failed to protect the child from the mother’s fiancé. The father requested that the trial court enter an order awarding him physical custody of the child.
After the father filed his answer and counterclaim, the parties agreed that Bell would be removed as the child’s counselor and that the child would be evaluated by Sandra Segall, a licensed professional counselor. On November 9, 1999, the trial court entered an order on the case action summary sheet that stated, in part, “Sandra Segall is appointed [licensed professional counselor] for this Court, and [she is] to make a report of her findings and recommendations to this Court only.”[3]
*355 The trial court set the case for trial in April 2001. The trial court conducted a trial over a period of nine days during the months of April, June, July, and December 2001 and April 2002. In April 2001, approximately one week before the trial began, the mother deposed Segall regarding her numerous counseling sessions with the child since November 1999. After the deposition, the mother filed a motion requesting that the trial court “disqualify” Segall from serving as the “court-appointed expert” and that it appoint a new counselor to assess the child. The mother alleged, in part, that Segall had “no expertise ... in the specific area of intrafamilial child sexual abuse and no expertise in the assessment of allegations pertaining to in-trafamilial child sexual abuse.” The trial court denied the mother’s motion to disqualify Segall.
At the beginning of the trial proceedings in April 2001, the mother objected to Se-gall’s being allowed to testify in the case because, the mother said, she was not qualified to testify as an expert. Counsel for the mother also stated:
“[MOTHER’S COUNSEL]: I’m extremely concerned about how we’re going to proceed as far as the child’s allegations. I mean, there’s nothing in the rules in the law anywhere that say that we can end around the hearsay rule ... unless the out of court statement is not offered for the truth of the matter.[4] Obviously, we will have testimony that involves what the child said. That’s illegal. I need some guidance from the Court about how we’re going to handle that. I will need to enter appropriate objections. We can’t just all presume to come in here and offer what the child said if it’s being offered for the truth of what she said. That’s another reason that we vehemently object to the — to any report from Sandra Segall being admitted.... This is not a criminal proceeding. The child sex abuse victim protection act does not apply. The rule is that [the child] would have to testify. There is no way to say that we’re just going to ignore that rule.
[[Image here]]
“[MOTHER’S COUNSEL]: ... I’m not trying to throw a monkey wrench in this. But what happened as far as Sandra Segall and all this information that is floating around out there, I cannot just say, okay, well, let’s all just waive the hearsay rule and whatever the child has said to anybody just comes in. It can’t happen that way. So I need to know how we’re going to proceed on that issue.
[[Image here]]
“COURT: Wait a minute. Is anybody calling the child?
“[MOTHER’S COUNSEL]: ... [W]e don’t want to put the child through this. But on the other hand, we can’t just waive our rights as far as the hearsay rule and just throw it over to them. They’ve got the more critical petition to modify custody. So it is incumbent *356 upon them to figure a way to give the Court evidence to modify custody and all that [Ex parte] McLendon[, 455 So.2d 863 (Ala.1984),] requires. I’m not going to just say, fine, you know, we will just ignore hearsay and have at it.”
Thereafter, the trial judge requested that the parties “figure it out,” but he stated that he would “follow the law” and he advised the parties to “[u]se the rules to your best advantage.”
Before Segall began her testimony, the mother renewed her motion to exclude Se-gall as an expert witness; the trial court denied the motion. The following discussion ensued:
“[FATHER’S COUNSEL]: I’ve got one issue to raise, your Honor. We’re going to ask that [Segall] testify as to what the child said under Rule 803(4) of the Alabama Rules of Evidence.... Under that exception, ... we think that we can admit the child’s statements made to Mrs. Segall because it was done in the process of diagnosis or treatment. That’s under 803(4).
“COURT: Mrs. Segall, were statements made to you by the child during your diagnosis of the child or your treatment of the child?
“[SEGALL]: Yes.
“[MOTHER’S COUNSEL]: Your Honor, we object. We don’t believe that the rule covers that. It covers presence, impression under 803 with regard to specific treatment, bodily conditions, that sort of thing. An ongoing statement in treatment, this is another end around the basic hearsay rule.”
After further discussion regarding the mother’s objection to Segall’s testimony, the trial court stated: “Your record is made. Overruled. She will be allowed to testify to that. She was appointed by the Court. Standing objection noted.”
Soon after Segall began her testimony at the portion of the trial conducted in April 2001, the following discussion occurred:
“[FATHER’S COUNSEL]: Did you get any prior history of [the child] from anyone?
“[SEGALL]: I know I talked to the guardian. I can’t remember. It’s been a year and four months. It’s been sixteen months since I spoke to [the guardian ad litem] about this. To the best of my recollection, [the guardian ad litem] told me—
“[MOTHER’S COUNSEL]: Your honor, I object on whatever [the guardian ad litem] told her. I mean, we’re going way far afield on this — Let me go ahead and issue a standing objection. I may have to do it every time just to be sure that the record is clear on it. As far as her talking to any other person, [the child], school teachers, the guardian ad litem, anyone, I object. It is hearsay. It is inadmissible.
“[FATHER’S COUNSEL]: Did you have a question—
“[MOTHER’S COUNSEL]: I need a ruling.
“THE COURT: Overruled. You got your ruling. If that is going to be your motion, it will be the same ruling. It’s a standard ruling. Go ahead.
“[FATHER’S COUNSEL]: To save time, we will stipulate that she is going to do it.
“THE COURT: She wants to make sure the record is complete. Go ahead.”
After this exchange, the father’s direct examination of Segall continued. Segall’s testimony, in large part, consisted of a narrated reading from her notes regarding her counseling sessions with the child. The mother objected to Segall’s reading from her notes; the objection was over *357 ruled. After the mother again objected to SegaJl’s testimony concerning “statements and determinations from statements [Se-gall] says that [the child] has made,” the trial court stated:
“Overruled. Now, I understand you want to create a record and be very clear on the record. There is a line between being clear, representing your client and being almost disruptive. Your standing objection to Mrs. Segall’s testimony is noted. Thank you.”
At the close of the proceedings in April 2001, the father’s direct examination of Segall was continued until a later date. The trial court entered an order on the case action summary sheet that stated, in part, “[g]ag Order insofar as Sandra Se-gall’s notes and deposition to be submitted to expert to be named by [the mother].... Counseling exclusively by Sandra Segall to continue.”[5] The trial court also entered an order permitting all parties to obtain copies of Segall’s counseling records and memoranda regarding her sessions with the child and from her “conversations with any person relative to [the child].”
Segall was unable to resume her testimony at the portion of the trial conducted in June 2001 because she was ill. The father’s direct examination of Segall resumed at the trial proceedings held in July 2001. At the beginning of Segall’s testimony presented at the July 2001 proceedings, counsel for the father stated:
“I think we’re dealing with Mrs. Se-gall, [your notes from] February 28th of 2001. I think that is about where we left off.
“Your Honor, I’m going to speed this up. I’m going to introduce with no objection from the other counsel the whole set of the records, her whole notes, then I can start speeding this up.”
Segall then resumed her testimony, narrating from her notes and answering additional questions. However, soon after testimony resumed, counsel for the mother stated: “Your Honor, I had a continuing objection to the hearsay. I assume that that follows over to each installment.” The trial court responded: “Thank you. Go ahead.” After the father finished examining Segall as to her notes from her counseling sessions with the child, the notes were admitted into evidence.[6]
*358 The trial proceedings were concluded in April 2002. After the trial, by agreement of the parties, the mother deposed Ray Little, an alleged expert in the standards of practice for licensed professional counselors. On July 16, 2002, after receiving Little’s deposition testimony, the trial court entered a judgment awarding the father custody of the child. The judgment stated, in part:
“1. The Court appointed Sandra Se-gall to be the [licensed professional counselor] for the parties’ minor child and to make a report and recommendations to this Court, only. Mrs. Segall made a recommendation to this Court and the same is taken along with all the other evidence and testimony received in this matter.
[[Image here]]
“3. The Court finds that the best interest of the child would be served with the primary residence of the minor child being placed with the father and the Court finds that any disruptive effect of the change in the residence will be outweighed by the benefit to the child. Therefore the primary residence of the parties’ child ... is changed to the father, subject to the visitation as set out herein to the mother.”
The mother was awarded standard visitation and was ordered to pay child support. The mother filed a postjudgment motion; the motion was denied. The mother appeals.
The mother contends that the trial court erred by admitting Segall’s testimony because, she says, Segall was not an expert in the forensic evaluation of child sexual abuse.[7] The mother also contends that the trial court erred by admitting Segall’s testimony because it was based on hearsay statements. Further, the mother argues that the trial court erred by awarding custody of the child to the father because, she says, the father failed to meet his burden of proof under Ex parte McLendon, 455 So.2d 863 (Ala.1984).
In regard to Segall’s qualification as an expert, Rule 702, Ala. R. Evid., states:
“If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.”
“The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose discretion will not be disturbed on appeal except for abuse.” Hagler v. Gilliland, 292 Ala. 262, 264, 292 So.2d 647, 648 (1974).
*359 “[Wjhere a witness has sufficient ‘knowledge, skill, experience, or training ... that his opinion will be considered in reason as giving the trier of fact light upon the question to be determined’ it should be admitted as expert testimony.... [A]n objection to testimony of a competent expert based on the witness’s lack of knowledge goes to the weight of the evidence and not its admissibility.”
Tidwell v. Upjohn Co., 626 So.2d 1297, 1300 (Ala.1993) (quoting Ellingwood v. Stevens, 564 So.2d 932, 936 (Ala.1990)).
In the mother’s brief on appeal, she argues at length that Segall was not qualified to perform a forensic evaluation of the child.[8] The father takes the position, however, that the court’s appointment of Se-gall was not specifically directed toward a forensic evaluation of the child.
In point of fact, Segall testified that, because of the number of “experts” who had examined the child before she had an opportunity to interview the child,[9] she could not determine whether the child had been sexually abused or, if the child had been abused, who the perpetrator might have been.[10]
Although Segall had performed forensic evaluations of children in the past, the father did not call her to testify as an expert in forensic evaluation. Instead, the father called Segall to testify as a licensed professional counselor. Specifically, he requested that Segall discuss her 59 eounsel-ing sessions with the child conducted after November 1999, that Segall testify as to the behavioral problems that she had observed and diagnosed in the child, that Segall relate the results of her attempts to treat the child, and that Segall provide the trial court with a recommendation as to custody.
Segall testified that she was a licensed professional counselor and that she had a bachelor’s degree in psychology and a master’s degree in general psychology. She also testified that she had been in counseling practice for approximately 27 years; her counseling experience included serving in various psychology internships, serving as a staff psychologist at the Montgomery Area Mental Health Authority for 3 years, and counseling in private practice since 1985. Segall stated that during her employment at the Montgomery Area Mental Health Authority her patients had primarily been persons who were sexually, physically, or emotionally abused or neglected. She stated that she had presented workshops on child sexual abuse, that she had testified as an expert in sexual-abuse cases “hundred[s] of times,” and that she had received additional training pertaining to child-abuse and sexual-abuse cases through a psychiatrist in Atlanta and a child-advocacy group in Alabama. She testified that in the early 1990s she had served as a forensic evaluator but that she no longer performed forensic evaluations. *360 Segall testified that approximately 50% of her clients were children.
A further review of Segall’s qualifications as a licensed professional counselor is unnecessary. We cannot conclude that the trial court abused its discretion by determining that Segall was qualified to testify as an expert in this case as to those issues for which her testimony was offered by the father. The mother’s objection “goes to the weight of [Segall’s testimony] and not its admissibility.” Tidwell, 626 So.2d at 1300.
The mother next contends that the trial court erred by allowing Segall to offer her opinions as an expert because her opinions were based on inadmissible hearsay statements of the child; the father and the trial court relied on the hearsay exception provided in Rule 803(4), Ala. R. Evid., as the basis for introducing and admitting the hearsay statements made by the child.
Rule 803, Ala. R. Evid., states, in pertinent part:
“The following are not excluded by the hearsay rule, even though the de-clarant is available as a witness:
[[Image here]]
“(4).... Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.”
(Emphasis added.) As the Court of Criminal Appeals stated in Biles v. State, 715 So.2d 878 (Ala.Crim.App.1997):
“In determining whether a statement comes within this hearsay exception, courts have applied a ‘two-pronged test.’ The first prong ‘is the requirement that the statement must be one upon which medical personnel reasonably rely in diagnosis and treatment. The second prong consists of a requirement that the declarant possess a motive which is consistent with the rule’s underlying purpose ... [of] seeking diagnosis or treatment.’ ”
Biles, 715 So.2d at 887 (quoting Charles W. Gamble, McElroy’s Alabama Evidence § 261.02(4) (5th ed.1996)) (emphasis added).
We need not address the issue of whether a child’s statements made to persons other than a physician might, under appropriate circumstances, fall within the Rule 803(4) exception if those statements are made as part of the necessary process of medical diagnosis or treatment. See Advisory Committee’s Notes, Rule 803, Ala. R. Evid.; see generally State v. J.C.E., 235 Mont. 264, 271, 767 P.2d 309, 314 (1988) (“[T]he rationale behind the medical treatment exception is less forceful where a very young child is concerned. The child might not comprehend the necessity of telling a doctor the truth in order to aid diagnosis and treatment.”). That is not the situation presented here. In other words, in the present case, the child’s statements to Segall were not made for the purpose of “medical diagnosis or treatment.” Instead, they were made so that Segall, who was not a medical practitioner, could assess the child’s behavioral problems and make a recommendation to the trial court as to custody. We note that other courts have declined to extend the Rule 803(4) exception to hearsay statements made by children under similar facts. See, e.g., State v. J.C.E., 235 Mont, at 271, 767 P.2d at 314 (Refusing to extend the Rule 803(4) hearsay exception to a child’s statements made to a counselor who was not licensed to render a medical diagnosis. “Stuart is not licensed to render medical diagnoses, and therefore cannot testify about such diagnoses under this *361 exception.”); see also State v. Barone, 852 S.W.2d 216, 220 (Tenn.1993) (“While some jurisdictions have admitted the out-of-court statements of victims of child sexual abuse through the testimony of examining psychologists, ... the better-reasoned rule is that such statements do not satisfy the rationale and purpose for the [hearsay] exception.” (Footnote omitted.)). But see State v. Pettrey, 209 W.Va. 449, 460, 549 S.E.2d 323, 334 (2001) (“[W]hen a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist’s testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule ... if the declarant’s motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment.”). See also State v. Hinnant, 351 N.C. 277, 289, 523 S.E.2d 663, 670-71 (2000) (Discussing the common-law rationale underlying Rule 803(4) and the difficulty of applying the rule in cases involving young children. The court held that “hearsay evidence is admissible under Rule 803(4) only when two inquiries are satisfied. First, the trial court must determine that the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment. The trial court may consider all objective circumstances of record in determining whether the declarant possessed the requisite intent. Second, the trial court must determine that the declar-ant’s statements were reasonably pertinent to medical diagnosis or treatment.”). We likewise decline to extend Rule 803(4) in the present case.
The child did not testify in this case. Segall testified at length as to the child’s statements to her in counseling sessions, statements that were introduced for the truth of the matter asserted therein and therefore were inadmissible. Further, Se-gall was erroneously allowed to testify as to opinions she had formed based in part on the truth of many of the child’s out-of-court assertions. Those opinions included opinions that the child had been underso-cialized; that the child had been inconsistently disciplined by the mother; that the child suffered from oppositional defiant disorder; and that the child had been adversely effected by the alleged “hypervigi-lance” of her mother and the maternal grandmother, who was the child’s primary caregiver.[11]
When the trial court has overruled an objection to inadmissible evidence, “we *362 must assume on appeal that such evidence was considered by the trial court.” St. Paul Fire & Marine Ins. Co. v. Johnson, 256 Ala. 690, 692, 57 So.2d 80, 82 (1951). Accordingly, the trial court’s judgment awarding custody to the father is reversed, and the cause is remanded for a new trial.
In light of our decision that the trial court erred by admitting inadmissible hearsay, and in light of the conflict in the remaining evidence, we need not address whether the father failed to meet his burden of proof under Ex parte McLendon, 455 So.2d 863.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
PITTMAN, J., concurs in the result, without writing.

. A grand-jury proceeding was instituted as a result of the child's sexual-abuse allegations against the paternal grandfather.. However, no indictment was issued by the grand jury.

. Soon after the mother" filed her petition to modify the father’s visitation rights, the Department of Human Resources obtained emergency custody of the child based on proceedings held in the Autauga Juvenile Court arising out of the child's allegations against the mother's fiancé. The child was placed in the care of foster parents for a few days. After holding a shelter-care hearing, the Au-tauga Juvenile Court returned the child to the custody of the mother in September 1999.

. The voluminous record of this protracted custody battle includes numerous pleadings and procedural developments that are not pertinent to our resolution of this case, including, for example, petitions to intervene *355 and motions to allow visitation filed by the child's maternal and paternal grandparents and a petition filed by the mother’s fiancé regarding restrictions as to his presence around the child. The maternal and paternal grandparents were allowed visitation pending a final hearing, but neither set of grandparents was awarded visitation with the child in the final judgment. The petition filed by the mother’s fiancé was granted, and a pendente lite order was entered allowing him to be present around the child but prohibiting him from having any “individual, unsupervised, and/or unchaperoned contact with the child.”

. See Rule 801(c), Ala. R. Evid., defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” (Emphasis added.)

. The mother has not argued that the trial court erred by restricting to whom she could take the child for counseling.

. In his appellate brief, the father has argued that the mother waived any objection to the hearsay statements testified to by Segall because, he says, Segall’s counseling notes were entered into evidence without objection. As noted above, Segall’s testimony consisted largely of a narration and review of her counseling notes. The father’s introduction into evidence of those notes was simply a matter of form to, as the father’s counsel stated at trial, "speed up” the proceedings. In light of the mother's repeated standing objection to the introduction into evidence of any hearsay statements testified to by Segall, and in light of the reminder by counsel for the mother to the court of that objection between the time the notes were offered and the time they were admitted into evidence, we cannot conclude that the mother waived her objection to the admission of hearsay statements testified to by Segall. The statement by counsel for the father — “I'm going to introduce with no objection from the other counsel the whole set of the records, her whole notes, then I can start speeding this up” — can only be read in all fairness, based on the mother's repeated objections in the record before us and the context in which the statement was made, as a reference to the fact that, because the court had apparently decided to allow the admission of the hearsay statements over the mother's objections, the mother did not specifically object to those same hearsay statements coming into evidence in written form rather than being spoken into the record. See generally National Cas. Co. v. Dunn, 209 Ala. 484, 485, 96 So. 576, 577 (1923) (opinion on rehearing) (“[I]t was not necessary for counsel to repeat his objection and the ground for it, every time *358 an additional question to elicit the same illegal testimony was propounded to the witness.” "The bill of exceptions shows a running colloquy which, as above stated, was logically and actually a single proposition — to elicit hearsay testimony of agency on the one side, and to exclude it, because it was not made admissible by proof of agency, on the other.”); In re Powers, 523 So.2d 1079, 1082 (Ala.Civ.App.1988) ("[W]here the trial court indicates a continuing adverse ruling and grants to an attorney a continuous objection, which contains all grounds which he has previously interposed to the lead questions, the attorney is thereby relieved from making a formal objection after each future question concerning the same general train of factual material and, thereafter, the attorney can properly raise on appeal the propriety of the adverse ruling upon his specific 'continuing objections’ to those questions.”).

. The mother also argues that Segall should not have been permitted to testify because, she says, Segall "retracted” her deposition testimony. However, we have reviewed the record and conclude that the mother's argument on this issue is without merit.

. Based on Segall’s testimony, "[fjorensic evaluation is the determination as to whether or not a child's testimony or interviews are consistent with child sex abuse.”

. By the time Segall was appointed by the trial court, see Rule 706, Ala. R. Evid., the child had already been examined several times by a physician, by an investigator from DHR, and by a counselor retained by the mother. The physician had concluded that it was very likely that the child had been sexually abused; as a result of that diagnosis, a criminal investigation of the paternal grandfather had been instituted. Further, the counselor that had been retained by the mother had interviewed the child on six occasions regarding the alleged sexual abuse.

. Segall also expressed her concern that, based on statements the child had made to her, the child might have been "coached” as to the sexual-abuse allegations.

. At trial and on appeal, both parties treat the out-of-court statements of the child, as testified to by Segall, as hearsay; that is, the parties treat the child’s out-of-court statements as having been introduced at trial, and as having been relied upon by Segall, directly for the truth of the facts asserted therein. See Rule 801(c), Ala. R. Evid. (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted”). Compare Ex parte McAllister, 541 So.2d 1104 (Ala.1989) (likewise holding that an expert could not testify to or base her opinion upon facts told to her by a child where the expert did not have firsthand knowledge of those facts and those facts were not proven by other, competent evidence). The issue before us is whether Rule 803(4) provides an exception to the hearsay rule that would allow the use of the child’s out-of-court statements for this purpose. We do not have before us the different question whether the fact that a child makes a given statement (which, unlike the truth of the facts asserted in such a statement, is something of which an expert does have firsthand knowledge) could appropriately be considered by a trial court, or be utilized by an expert, for a purpose other than directly establishing the truth of the fact asserted in that statement, e.g., for the purpose of demonstrating the child's awareness or knowledge of certain subject matter. Nor is any exception to the rule against hearsay, other than Rule 803(4), at issue here. See generally Rules 803 and 804, Ala. R. Evid.