PITTMAN, Judge.
S.J.R. (“the mother”) appeals from a judgment modifying the child-custody provisions of her divorce judgment from F.M.R. (“the father”). The mother contends that the father failed to meet the burden of proof set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), so as to justify a change of custody; that the trial court erred in ordering her to pay child support; and that the trial court erred in admitting hearsay evidence at trial.
This is the fourth occasion that these parties have been before this court concerning the custody of the parties’ now 15-year-old daughter (“the child”). We will briefly summarize the pertinent facts rather than discuss the case history at length. In July 1996, the parties were divorced by a judgment that incorporated an agreement of the parties. In that judgment, the mother was awarded primary physical custody of the child and the father was awarded standard biweekly weekend visitation.
Between 1999 and 2001, the mother and the father became embroiled in a custody-modification proceeding stemming from conflicting allegations that the child’s paternal grandfather or the mother’s flaneé, or both, had sexually molested the child. The trial court entered a judgment changing the child’s primary physical custody from the mother to the father on July 16, 2002, and the mother appealed from that judgment. See S.J.R. v. F.M.R., 933 So.2d 352 (Ala.Civ.App.2004) (“S.J.R. I”). In reviewing the trial court’s 2002 judgment, this court determined that the trial court had improperly admitted hearsay testimony over the objection of the mother; we reversed the trial court’s judgment awarding custody of the child to the father and remanded the cause for a new trial. 933 So.2d at 361-62. That decision was issued by this court on May 7, 2004. The father filed an application for a rehearing on May 20, 2004; that application for a rehearing was overruled on February 25, 2005. On March 11, 2005, the father filed a petition for a writ of certiorari to the Alabama Supreme Court; that petition was denied on January 13, 2006. The certificate of judgment in S.J.R. I was issued on January 18, 2006.
As we noted in S.J.R. v. F.M.R., 984 So.2d 468 (Ala.Civ.App.2007) (“S.J.R. III”), while appellate proceedings were continuing in S.J.R. I, the mother filed a motion on October 19, 2004, to show cause why physical custody of the child should not be immediately returned to the mother and to set a visitation schedule for the father. In response to that motion, the trial court entered the following order on December 8, 2004: “Show cause issue denied. Court officially suspends all visitation based specifically on testing of [the court-appointed child counselor]; visitation suspended for [the] mother.” Under Ex parte Tiongson, 765 So.2d 643 (Ala.2000), a decision of this court “ ‘is not final until th[is] court issues its certificate of judgment, and an application for rehearing in th[is] court and a petition in [the Alabama Supreme] Court for writ of certiorari stay the issuance of that certificate.’ ” 765 So.2d at 643 (quoting Jackson v. State, 566 So.2d 758, 759 n. 2 (Ala.1990)). This court, in S.J.R. v. F.M.R., 975 So.2d 1024 (Ala. Civ.App.2005) (table), treated the December 2004 visitation order as an appealable final judgment and affirmed without opinion; however, as we noted in S.J.R. III, review of that order would have been proper only via a petition for an extraordinary writ.
*1231 The genesis of S.J.R. III was equally convoluted. After the certificate of judgment in S.J.R. I had been issued, the trial court set the ease “ ‘for final disposition on pending petition at 9:00 on 9-7-06.’ ” 984 So.2d at 470. After several continuances, and after both parties had filed numerous motions, on October 18, 2006, the trial court again set the case for a final hearing to dispose of “ ‘all pending matters’ ” on March 8, 2007. Id. However, on October 26, 2006, the mother filed a motion seeking to regain custody of the child immediately; the trial court heard argument, but no additional testimony concerning the mother’s motion on January 4, 2007, but it denied the mother’s request for custody and again awarded the father pendente lite custody of the child. Id. The mother again filed a notice of appeal from the temporary award of custody to the father, thus preventing a final hearing on the merits. Id.
Because we recognized in S.J.R. III that the mother had improperly attempted to appeal from a nonfinal pendente lite custody order, we dismissed that appeal. However, we had consolidated that appeal with the mother’s mandamus petition seeking an immediate custody hearing and a recu-sal of the trial judge. On the basis of Ex parte R.D.N., 918 So.2d 100 (Ala.2005), we granted the mother’s petition for a writ of mandamus ordering the trial judge to re-cuse himself from further proceedings in the case. The certificate of judgment in S.J.R. III was issued on December 7, 2007.
The present appeal is from a custody-modification judgment entered by a second trial judge on July 9, 2008. On March 27, 2008, that judge conducted an ore tenus proceeding on the parties’ competing custody-modification petitions. The parties, the child’s guardian ad litem, the child’s private counselor, the child’s T-ball coach, the child’s second-grade teacher, the child’s fourth-grade-teacher, and the child’s junior-high-school counselor testified during the hearing. The trial court also received certain documentary evidence; the previously recorded testimony of a witness, who was unavailable due to mental illness at the time of trial, and a stipulation that the deposition of the child’s psychiatrist would be offered as soon as it was transcribed.
On July 9, 2008, the trial court entered a final judgment resolving the competing child-custody petitions of the parties. In that judgment, the trial court recounted the lengthy procedural history that had led to the modification hearing in 2008 and noted that the mother had testified on her own behalf and had called only one witness, the father, to support her claims. On the other hand, the judgment noted that the father had called as witnesses numerous teachers and counselors and had offered other testimony from the child’s psychiatrist to support his request for an award of custody of the child. The child’s teachers, without exception, commented on the father’s continuing devotion to and involvement with the child. The child’s coach stated that he had seen a marked improvement in the child’s social and academic skills during the time that the father had been awarded pendente lite custody of the child.
At his deposition, the child’s psychiatrist stated that he had diagnosed the child as having pervasive developmental disorder, which includes a “spectrum of five diagnoses” that include autism and attention deficit/hyperactivity disorder (“ADHD”). In her testimony, the child’s counselor, noted that although she agreed with the psychiatrist’s diagnosis, she understood that the child’s pediatrician had diagnosed the child with ADHD before the child had been referred to the psychiatrist. The counselor stated that the father had hired her to be the child’s private counselor fol *1232 lowing the original custody-modification hearing in 2002; she stated that she had been working with the child extensively since that time. She noted that, at the time of the 2008 hearing, the child was suffering from a mood disorder that was exacerbated by the child’s having entered adolescence. She opined that, based upon her years of personally counseling the child and the child’s multiple developmental diagnoses, moving the child’s custody back to the mother from the pendente lite custody of the father would cause “irreparable damage” to the child. On cross-examination, the counselor opined that the mother was overprotective of the child, which, she said, contributed to the child’s separation anxiety and other developmental problems. Upon direct questioning by the trial court, the counselor stated that, because she thought the mother had “significantly contributed to” the child’s psychological problems during the time the mother had had primary physical custody of the child, any future visitation between the mother and the child should be supervised until a positive environment could be developed such that interaction between them would not exacerbate the child’s developmental problems.
As previously noted, the mother did not offer any corroborating testimony to support her claim of being the better custodial parent. Indeed, the testimony of both parents confirmed that the mother had not seen or talked with the child in four years. The child’s private counselor testified that the mother had never contacted her during that time to arrange any type of visitation — i.e., by telephone, by letter, or in person. In fact, the counselor approvingly noted that the father had “gone beyond” her professional recommendations in order to help the child cope with her developmental problems and to grow into a productive person. However, the counselor also testified that the child’s developmental and psychological problems were going to evolve and worsen during her adolescence and that the child would need constant medical and psychiatric care for the foreseeable future.
Based upon the testimony of the child’s psychiatrist, teachers, and counselors, we conclude that the trial court properly determined that the father had proved that a change in circumstances had occurred and that awarding the father custody of the child would materially promote the child’s best interests and would outweigh any disruptive effects caused by awarding the father custody. The trial court’s custody award, therefore, was proper.
The mother also asserts the trial court erred in ordering her to pay $750 a month in child support. First, we note that the parties’ combined monthly income exceeds $10,000, and, therefore, the child-support computation does not fall within the parameters of the “schedule of basic child support obligations” in effect before January 2009. See Rule 32(C)(1), Ala. R. Jud. Admin. (“The [trial] court may use its discretion in determining child support in circumstances where combined adjusted gross income ... exceeds the uppermost levels of the schedule.”).[1] In her appellate brief, the mother attempts to extrapolate a “suggested” child-support obligation of $355.16 per month. However, the Comment to Rule 32 (as amended to conform to amendments effective October 4, 1993) *1233 expressly states that “[w]here the combined adjusted gross income exceeds the uppermost limit of the schedule, the amount of child support should not be extrapolated from the figures given in the schedule, but should be left to the discretion of the court.”
Citing Dyas v. Dyas, 683 So.2d 971, 973-74 (Ala.Civ.App.1995), the mother contends that the father failed to present evidence from which the trial court could conclude that $750 was an appropriate amount of monthly child support. Also, citing Dyas, she asserts that the trial court could not award any support without testimony regarding the child’s needs. We disagree with the mother’s characterization of the evidence.
The record is replete with testimony regarding the extensive amount of time and effort that the father had spent in hiring tutors for the child, in enrolling her in different enrichment activities, and in retaining a private counselor for the child (who testified that she had counseled the child on 266 separate occasions). Although the mother points out that the modification judgment requires her to equally share in the cost of all uncovered “medical, dental, orthodontic, or optomet-ric services” that the child may receive in the future, we cannot properly interpret the wording of that provision as including the child’s personal counseling or tutoring services, both of which will be needed on a regular basis throughout the child’s minority; the costs of those services were, in actuality, allocated to the father alone. In addition, we note that the combined testimony of the child’s teachers, doctors, and counselors indicated that the child’s special academic and psychological needs are extensive and expensive. A specific dollar amount is not needed for this court, or the trial court, to conclude that the child’s overall needs are substantial. Moreover, the fact that this case has taken nearly seven years to be finally resolved has meant that the father has had to bear the entire burden of paying for all the child’s expenses, including all pertinent medical bills, since the date the first modification judgment was entered on July 16, 2002. We cannot say that the trial court erred in ordering the mother to pay $750 toward the monthly expenses for the remaining four years of the child’s minority.
Finally, as in S.J.R. I, the mother asserts that the trial court erred in admitting hearsay evidence during the private counselor’s testimony over her attorney’s objection. A thorough reading of the transcript of the proceeding leading to the judgment currently being appealed reveals not a single instance in which the counsel- or testified regarding statements that the child made to her. The counselor was questioned by the father’s attorney, by the mother’s attorney, and by the trial judge, and in every instance she stated that she based her answers and her opinions on her interactions with the parties, on her observations of the child, and on the medical diagnoses of the child’s ongoing personality and mood disorders. Unlike the situation in S.J.R. I, at no time did the counsel- or read any of her notes into evidence or quote the child as telling her specific “facts” when answering questions during the trial. The reversible error in S.J.R. I, which was the use of the child’s out-of-court statements for the truth of the matter asserted as the basis of a factual conclusion, is thus not present on this record. See S.J.R. I, 933 So.2d at 360-61. Therefore, we conclude that the mother has failed to demonstrate that hearsay was admitted over her objection.
The modification judgment is due to be affirmed.
AFFIRMED.
*1234 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. By order dated November 19, 2008, the Alabama Supreme Court amended Rule 32, Ala. R. Jud. Admin., including the child-support guidelines, effective January 1, 2009. By order dated February 25, 2009, the Alabama Supreme Court amended Rule 32(A)(4) and Rule 32(B)(7), Ala. R. Jud. Admin., effective March 1, 2009. Those amendments are not applicable in this case.