NABERS, Chief Justice.
R.D.N. and A.M.N. were divorced in 1997 in Marengo County. They have one child who was born in 1993. The divorce judgment granted custody of'the child to A.M.N. (“the mother”) and granted R.D.N. (“the father”) visitation rights. Two weeks after the divorce judgment was entered, the mother moved with the child to Florida to be near her family. As a result, the father was separated from his child by approximately 600 miles. Because of the move and alleged attempts by the mother to hinder his visitation rights, the father, on October 31, 1997, filed a petition to modify custody or, in the alternative, to modify visitation rights.
Beginning in November 1997 and continuing periodically over a two-and-one-half-year period, the father took the child to see a psychologist, Dr. Miriam Drum-monds, in Birmingham. The mother also took the child to see a psychologist, Dr. Deborah Day, in Florida. In March 1998, the trial judge appointed a guardian ad litem for the child. On April 21, 1999, based on comments made by the child, the father filed a report with the Florida Department of Children and Families (“DCF”) alleging that the maternal grandfather had sexually molested the child. On October 18, 1999, the Florida DCF wrote a letter to the trial judge recommending that the mother, the father, the child, and the maternal grandparents be evaluated by an independent, impartial psychologist. On April 25, 2000, upon motion by the father, the court appointed an independent psychologist, Dr. Kathryn Allen, to evaluate the parties.
On June 17, 2000, during a session with Dr. Drummonds, the child described an incident of sexual exploitation allegedly committed by his maternal grandfather. Dr. Drummonds made a mandatory réport of alleged sexual exploitation of the child by the maternal grandfather to the Maren-go County Department of Human Resources (“DHR”) on June 19, 2000. ' During the summer of 2000, DHR investigated the report. The results of the DHR investigation were inconclusive as to sexual abuse; however, the child continued to make revelations of sexual exploitation by his maternal grandfather to Dr. Drum-monds. At some point, Dr. Drummonds also provided a written report to Charlotte Webb of the Marengo County DHR expressing concern that the mother was trying to alienate the child from the father based on audiotapes of several telephone conversations between the mother and the child.
On June 29, 2000, the trial court held a hearing at the request of DHR. Before the presentation of evidence, a colloquy took place between the trial judge, the guardian ad litem,[1] the parties’ attorneys, and the attorney for DHR. The attorney for DHR explained that Dr. Drummonds had made a mandátory report in accordance with Ala.Code 1975, § 26-14-3, and that DHR *102 was required to investígate the report under Ala.Code 1975, § 26-14-7. The guardian ad litem made several statements critical of the father and of Dr. Drummonds and directed the following statement to the father’s attorney, “I’m against your side of the case.” The trial judge added, “I’m sick of this case.... ” The June 2000 hearing proceeded with both Dr. Drummonds and Charlotte Webb, the DHR investigator, testifying to evidence of sexual exploitation of the child by the maternal grandfather. Both testified that it was their opinion that the child had not been coached by the father to make the allegations.
On August 1, 2000, DHR recommended that the child have no contact with the maternal grandfather pending an investigation by the Florida DCF. On August 2, 2000, the trial judge ordered that the child return to Florida for school, but he directed that there be no unsupervised visitation with the maternal grandfather. The Florida DCF, which could not independently verify the allegations of sexual abuse, concluded on December 21, 2000, that the child was not being abused.
On December 11, 2001, the court-appointed psychologist, Dr. Allen, filed her custody evaluation in court. Dr. Allen reported that material changes had occurred since the original custody order was entered, that a change of custody would materially promote the child’s best interest and welfare, that the good and positive results from the change would far outweigh the disruptive effect on the child of the change in custody, and that the child should reside with his father.
The hearing on the custody-modification petition was held on July 2-3, 2002. Extensive live and deposition testimony from experts, teachers, friends, and family was presented. The guardian ad litem made no recommendation to the court on the record regarding which parent should have custody of the child.
On July 26, 2002, the guardian ad litem submitted a detailed bill to the trial judge in the amount of $18,280.06 for her services as guardian ad litem. The guardian ad litem had not submitted a fee request or otherwise documented the hours spent, costs expended, or hourly rate for performing her duties as guardian ad litem. This bill was not a part of the official record; it was attached to a brief submitted by the guardian ad litem to this Court. In her brief to this Court, the guardian ad litem stated that she had had a private conference with the trial judge in the summer of 1999 and at that time recommended that custody of the child remain with the mother.
The court issued an order on October 2, 2002. Despite the recommendations of Dr. Allen, the court found that it was in the child’s best interest not to change custody. The court made no changes to the visitation schedule. The court noted that the guardian ad litem’s recommendation was that the child remain in the custody of the mother and that the bill submitted to the court by the guardian ad litem was reasonable. The court found the father’s testimony to be not credible, his allegations that the child was being sexually exploited by the maternal grandfather to be unfounded, and his claims in that regard to be without merit. The court taxed substantially all of the guardian ad litem’s fees and expenses ($18,000) and one-half of the mother’s attorney fee ($14,000) to the father.
The father filed a motion to alter, amend, or vacate on October 28, 2002, which was denied by operation of law after 90 days. The father filed a notice of appeal on February 9, 2003. The Court of Civil Appeals affirmed the trial court’s judgment without an opinion. R.D.N. v. *103 A.M.N. (No. 2020447, Feb. 20, 2004), 912 So.2d 1163 (Ala.Civ.App.2004)(table). No application for rehearing was filed. The father then filed a petition for a writ of certiorari on March 5, 2004, which this Court granted.
The first issue we address is whether, in a child-custody dispute, fundamental principles of due process are violated when a guardian ad litem communicates to the trial judge ex parte her recommendations regarding custody, without the knowledge or consent of the parties and without the parties’ having an opportunity to contest those recommendations in open court.
I.
In C.J.L. v. M.W.B., 879 So.2d 1169 (Ala.Civ.App.2003), cited by the Court of Civil Appeals in their no-opinion affir-mance in this case, the Court of Civil Appeals addressed CJ.L.’s arguments that the use of guardians ad litem in custody cases violates due-process rights and that the use of guardians ad litem should be abolished in such cases. The court held:
“... Alabama law clearly permits the use of a guardian ad litem in a custody case. See Ala.Code 1975, § 12-15-1(8). The cases addressing the use of a guardian ad litem make it clear that a trial court may consider, although it is not bound to follow, a recommendation made by a guardian ad litem. Moody v. Nagle, 811 So.2d 546, 548 (Ala.Civ.App.2001).
“ ‘Moreover, the authority of a guardian ad litem to make a recommendation as to custody, and the trial court’s ability to consider that recommendation, are inherent in the definition of a guardian ad litem. See § 12-15-1(8), Ala.Code 1975 (a guardian ad litem is “[a] licensed lawyer appointed by the court to defend or represent a child in any action to which such child may be a party”).’
“G.C. v. G.D., 712 So.2d 1091, 1095 (Ala.Civ.App.1997); see also S.D., Jr. v. R.D., 628 So.2d 817, 818 (Ala.Civ.App.1993) (‘The guardian ad litem correctly observes that he is an officer of the court and is entitled to argue his client’s case as any other attorney involved in this case.’). We decline to reconsider the longstanding use of guardians ad litem by the trial courts of this state.”
879 So.2d at 1181.
In C.J.L., unlike the present case, the recommendations of the guardian ad litem were before the court and were contested during the trial on the merits. C.J.L. leaves open the issue now before this Court of the propriety of ex parte communications between a guardian ad litem and the trial court.
Alabama appellate courts do not sit in judgment of disputed evidence presented ore tenus before the trial court. Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994). However, questions of law are not subject to the ore tenus rule. Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). Therefore, the presumption of correctness in this ore tenus proceeding applies only to the trial court’s findings of fact. Ex parte Beckham, 643 So.2d 1373, 1374 (Ala.1994). Whether a guardian ad litem may communicate ex parte with the court in a child-custody case is a question of law, and the trial court’s decision on a question of law is accorded no presumption of correctness. See id. We review its conclusion de novo.
If a guardian ad litem is to argue the case “ ‘as any other attorney involved in [the] case,’ ” C.J.L., 879 So.2d at 1181, then it follows that rules of ethics applicable to lawyers and the fundamental princi- *104 pies of due process apply to the conduct of a guardian ad litem in a court proceeding.
Rule 3.5 of the Alabama Rules of Professional Conduct prohibits lawyers from engaging in an ex parte communication with a judge.[2] Canon 8 A(4) of the Canons of Judicial Ethics similarly prohibits judges from engaging in ex parte communications concerning a pending case. The Alabama State Bar Association has issued an opinion, highlighting the ethical concerns that arise when a guardian ad litem in a child-custody case engages in ex parte communications with the judge hearing the case. The opinion states, in pertinent part:
“[I]t is the opinion of the Disciplinary Commission of the Alabama State Bar that an attorney who serves as a guardian ad litem may not have ex parte communications with the trial judge regarding any substantive issue before the court.”
ASBA, Formal Ethics Op. RO-00-02 (June 2000).
In Ex parte Berryhill, 410 So.2d 416, 418 (Ala.1982), we held: “The fundamental principle is that the decision of a court must be based on evidence produced in open court lest the guarantee of due process be infringed.” See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (“The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.”).
In the present case, the trial court’s order of October 2, 2002, contained findings of fact, conclusions of law, and a final judgment. The findings of fact stated, in part:
“The Court finds that [K.L.S.] has performed an excellent job in acting as the Guardian ad Litem in this matter. [K.L.S.] has made every effort to be fair and reasonable and to obtain all the necessary information to make a proper recommendation in this matter as to what is best for the minor child. She has made three (3) trips to visit the child in ... Florida with his Mother, the Respondent, and she has also visited the minor child in Alabama with his Father, the Petitioner. The Court finds that the Guardian ad Litem’s recommendation is that the minor child remain in custody of the Respondent, Mother.”
The guardian ad litem’s recommendation that the child remain with the mother was not presented as evidence produced in open court and was based on information that may or may not have been properly presented to the court.[3] As a result, the father was denied the opportunity to respond with rebuttal evidence and to present reasons why the recommendation of the guardian ad litem should not be followed. The mother was also denied the opportunity to respond and present reasons why the guardian ad litem’s recommendation should be followed.
The guardian ad litem made no recommendation on the record either by testimony or in a written report before or during the July 2002 hearing. The guardian ad litem apparently formed and expressed her opinion on the merits before the case was presented on the merits[4] and stated *105 conclusions openly hostile to the father’s position. There is no evidence in the record indicating that the guardian ad litem had any recognized qualifications that demonstrated that she had a unique ability to make a recommendation on child custody. Consequently, the right to contest the accuracy, substance, impartiality, and quality of the guardian ad litem’s recommendation to the court concerning the custody of the child was a procedural right denied the father in this case.
The court, in its discretion, disagreed with the recommendation of its court-appointed professional in evaluating the custody issue and chose to follow the guardian ad litem’s recommendation that custody remain with the mother. Additionally, the court denied the father’s request that his visitation rights be expanded or modified to account for the substantial travel time and expense involved in exercising his visitation with the child, who lives out of state. Therefore, we cannot conclude that the father’s rights were not prejudiced by the court’s error.
Under Ex 'parte Berryhill, supra, and Cleveland Board of Education, supra, we hold that, in these circumstances, the trial court’s ex parte communications with the guardian ad litem and its reliance upon her recommendation, given to the court as part of an ex parte communication, violated the fundamental right of the father to procedural due process under the Alabama and United States Constitutions.
II.
In its final order issued October 2, 2002, the trial court ruled:
“The Court determines that Guardian ad Litem fees hereby submitted in the amount of $18,000.00 are reasonable and are to be taxed as costs in this case [and] ... that all costs in this matter (including the Guardian ad Litem fees) are taxed to the Petitioner.”
No hearing was held in open court to allow either party to contest the reasonableness of the attorney fee requested by the guardian ad litem. The trial court’s order says that the fee was “submitted,” but there is no “submission” in the record. According to the guardian ad litem’s brief to this Court, the submission of her attorney-fee request took place ex parte after the close of evidence on July 26, 2002.[5]
The father was entitled to an evidentiary hearing for the purpose of determining a reasonable fee for the guardian ad litem and an order setting forth “with some particularity the findings from the evidence adduced.” Lolley v. Citizens Bank, 494 So.2d 19, 21 (Ala.1986); see also Van Schaack v. AmSouth Bank, 530 So.2d 740, 750 (Ala.1988) (absence of testimony concerning the services of the guardian ad litem was a factor in decision to remand for an evidentiary hearing to determine a reasonable fee).
We address only the procedural irregularities that occurred involving the guardian ad litem in this case; we do not reach the question whether the trial court exceeded the limits of its discretion in ordering the father to pay the entire fee of the guardian ad litem.
For the foregoing reasons, the judgment of the Court of Civil Appeals is reversed, and the case is remanded for that court to *106 enter an order remanding the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.

. The guardian ad litem participated in the . colloquy by telephone.

.See also Rule 3.7, Ala. R. Prof. Cond., which limits the ability of a lawyer to be an advocate at a trial in which the lawyer is likely to be a necessary witness.

. Rule 43(a), Ala. R. Civ. P., requires that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules.”

. According to her brief to this Court, which *105 is not part of the record, the guardian ad litem met in private with the judge and made her recommendation that the child remain with the mother three years before the case was heard on the merits.

. It is not possible to reconstruct the number, nature, or extent of ex parte communications between the guardian ad litem and the trial court while this matter was pending before the trial court.