3 So.3d 237 (2008)
M.B.
v.
R.P. and P.P. et al.
2070280.
Court of Civil Appeals of Alabama.
August 15, 2008.
*239 R. Stan Morris of Cartee & Morris, L.L.C., Guntersville, for appellant M.B.
Jonathan W. Cartee of Cartee & Morris, L.L.C., Guntersville, for intervenors W.B., and Ma.B.
Phillip W. Williams, Jr., and Russel A. McGill of Brunson & Associates, P.A., Gadsden, for appellees R.P. and P.P.
PER CURIAM.
M.B. ("the father") appeals a December 13, 2007, judgment that determined that his child, B.P., was dependent and awarded joint legal custody of the child to the child's maternal grandparents, R.P. and P.P., and the child's paternal grandparents, W.B. and Ma.B. The December 13, 2007, judgment specified that the maternal grandparents were to receive primary physical custody, awarded the paternal grandparents a standard schedule of visitation, and awarded the father "reasonable visitation" during the time the child was visiting the paternal grandparents.

Facts
The child was born on July 10, 2002. The father and the child's mother, Br.P ("the mother"), never married, but M.B. was listed as the child's father on his birth certificate. No formal action to establish the father's paternity was initiated. However, during the course of this matter, the parties stipulated to the father's paternity, and the juvenile court noted that stipulation on the record.
The mother was murdered on July 27, 2005; the mother died intestate and had made no arrangements concerning a guardian for the child. Approximately one month after the mother's death, the maternal grandparents filed a complaint seeking to be awarded emergency custody of the child and seeking to have the child declared dependent. In their complaint, the *240 maternal grandparents alleged that the child's mother had been killed; that the father had had only minimal contact with the child and had never paid child support; that the father had assaulted the mother when she was pregnant with the child; that the father was a drug addict; and that the father had committed domestic violence against R.C., his girlfriend, who lived with the father and was the mother of another of the father's children. Based on the maternal grandparents' dependency complaint, the juvenile court, on September 2, 2005, awarded the maternal grandparents emergency custody of the child; the September 2, 2005, order did not contain a specific finding that the child was dependent.
The father filed a motion to set aside the September 2, 2005, order, and the juvenile court conducted a pendente lite hearing at which it received ore tenus evidence. After that hearing, on September 16, 2005, the juvenile court entered a "pendente lite" order in which it awarded joint custody of the child to the maternal grandparents and the father; pursuant to that joint-custody award, the maternal grandparents and the father alternated weeks of custody of the child. In the September 16, 2005, order, the juvenile court did not expressly find the child dependent; however, the juvenile court referenced the fact that the order was entered on the issues of dependency and custody.
In July 2006, the maternal grandparents moved to terminate the father's "visitation" with the child; in support of that motion, the maternal grandparents submitted the affidavit of R.C. In that affidavit, R.C. alleged that the father had committed acts of domestic violence against her in front of the child and her own child, that the father continued to smoke marijuana and drink alcohol, and that she had witnessed physical altercations between the father and the paternal grandfather. R.C. also alleged in her affidavit that she was five months pregnant with the father's child and that the father had left her for another woman. The juvenile court scheduled an ore tenus hearing on the maternal grandparents' motion; the transcript from that hearing is not contained in the record on appeal. After the hearing, the juvenile court, on August 7, 2006, entered an order in which it found that the child "remained dependent" and in which it temporarily suspended the father's exercise of joint custody until the father completed anger-management and "Level II CRO" classes.[1] After the father had complied with the terms of the August 7, 2006, order, the juvenile court, on February 27, 2007, ordered that the father have supervised visitation with the child.
In March 2007, the paternal grandparents moved to intervene in the action. The paternal grandparents initially sought an award of grandparent visitation pursuant to § 30-3-4.1, Ala.Code 1975. The paternal grandparents later asked the juvenile court to award them custody of the child in the event the child was determined to be dependent or custody was not awarded to the father. The record does not contain an order granting the paternal grandparents' motion to intervene. However, a March 9, 2007, visitation order referred to the paternal grandparents as "intervenors," and the paternal grandparents were designated as parties in later orders and in the final judgment.[2] Pursuant to the March 9, 2007, visitation order, *241 the paternal grandparents were awarded visitation with the child from 10:00 a.m. to 5:00 p.m. every Saturday, and the father was awarded visitation, subject to the paternal grandparents' supervision, from 1:00 p.m. to 5:00 p.m. on those Saturdays.
In July 2007, the father moved to dismiss the action, arguing that the juvenile court did not have subject-matter jurisdiction because it had failed to find the child dependent in its initial custody order. The juvenile court denied that motion.
The juvenile court conducted a two-day ore tenus dispositional hearing on October 23 and 25, 2007. See § 12-15-65, Ala. Code 1975. On December 13, 2007, the juvenile court entered its final judgment. Because we are remanding the cause to the juvenile court to reconsider the evidence presented to it during the October 2007 hearing, we do not set forth that evidence in this opinion.

Motions to Dismiss this Appeal
While his appeal was pending in this court, the father asked for and received an extension of the date on which his appellate brief was due. See Rule 31, Ala. R.App. P. (providing that an appellant's brief is due to be filed in this court within 28 days of the completion of the appellate record). Including the time specified in that extension, the father's brief was due in this court on March 19, 2008. The father electronically filed his brief in this court on March 15, 2008. The father's appellate brief contained a certificate of service stating, "I hereby certify that the foregoing has been served upon all attorneys of record by mailing a true and exact copy of same by U.S. mail, postage prepaid, properly addressed, this the 15th day of March 2007[sic]." (Emphasis added.) The father's attorney signed the certificate of service. On March 17, 2008, this court received paper copies of the father's brief.
On March 20, 2008, this court, apparently on the motion of the maternal grandparents, granted the maternal grandparents an extension of the time in which to file their appellate brief. After the grant of that extension, the maternal grandparents' brief was due April 14, 2008.
On April 11, 2008, the maternal grandparents filed a motion to dismiss the father's appeal. The maternal grandparents electronically filed a brief on April 14, 2008, and this court received paper copies of that brief on April 16, 2008. On April 15, 2008, the child's guardian ad litem filed a motion to dismiss the father's appeal. The father opposed the motions to dismiss.
In their motions to dismiss, the maternal grandparents and the guardian ad litem (hereinafter collectively referred to as "the movants") assert that they did not receive copies of the appellant's brief as set forth in the appellant's certificate of service, and they argue that, on that basis, the father's appeal should be dismissed.[3] In their motion, *242 the maternal grandparents cite Skelton v. City of Tuscaloosa, 46 Ala.App. 404, 243 So.2d 388 (Crim.1971), and Gorman v. Alexsis, 681 So.2d 655 (Ala.Civ.App.1995) (table), in support of their argument.
In response, the father submitted an argument, supported by the affidavit of his attorney and the affidavit of the attorney's secretary, asserting that the father's appellate brief was transmitted electronically to the maternal grandparents' attorney on March 20, 2008. The father's response explains that the father's attorney left for an international trip after electronically filing the father's appellate brief in this court on March 15, 2008, and that the attorney's secretary erroneously assumed that the briefs filed in this court would be automatically served upon all counsel of record. When someone from the maternal grandparents' attorney's law firm attempted to contact the father's attorney on March 20, 2008, the secretary for the father's attorney became aware of the mistake, and she e-mailed the father's appellate brief to counsel for the maternal grandparents. However, the secretary did not serve the maternal grandparents with a paper copy of the brief as specified in the certificate of service in the father's appellate brief.
On April 15, 2008, after he returned from his trip, the father's attorney served a paper copy of the father's brief on the movants. The father's attorney argues that it would be inequitable to dismiss this appeal based on the failure to timely serve the appellate brief on the movants. The father has moved this court, as an alternative to his opposition to the motions to dismiss, to exercise our discretion and suspend the requirements of Rule 31, Ala. R.App. P. See Rule 2(b).
In Skelton v. City of Tuscaloosa, supra, the appellants served a copy of their appellate brief on the state's attorney general rather than on the city attorney for the appellee. Citing former Supreme Court Practice Rule 11,[4] the Court of Criminal Appeals held that the "appellants' failure to serve [the] appellee with a copy of their brief within the time prescribed requires dismissal of this appeal." Skelton v. City of Tuscaloosa, 46 Ala.App. at 405, 243 So.2d at 388.
*243 In reaching its holding in Skelton, the court cited Dexter Service Co. v. Thames Lumber & Manufacturing Co., 281 Ala. 451, 204 So.2d 147 (1967). In that case, the appellee moved to dismiss the appeal for failure of the appellant to timely serve its appellate brief. The appellant admitted that it had served its appellate brief on the appellee one day late. The supreme court granted the motion to dismiss, explaining:
"`The question presented is whether [former Practice] Rule 11 requires the service of a brief on opposing counsel within the time prescribed for filing the brief. While the rule does not say so in those words, the requirement in that respect seems obvious. A brief which is timely filed necessarily must contain a certificate that service of the brief has already been made. Clearly implicit in this is the requirement that service of the brief be made within the time allowed for filing the brief. Such is the effect of our holdings in the following cases: Bozeman v. State, 269 Ala. 610, 114 So.2d 914 [(1959)]; Adkins v. State, 268 Ala. 548, 109 So.2d 749 [(1959)]; Golden v. State, 267 Ala. 456, 103 So.2d 62 [(1958)]; Gambrell v. Bridges, 266 Ala. 302, 96 So.2d 182 [(1957)]; Bruner v. State, 265 Ala. 357, 91 So.2d 224 [(1956)]. See, also, Thorpe v. State, [270 Ala. 434], 119 So.2d 222 [(1960)]. Cf. Tipton v. Tipton, 267 Ala. 64, 100 So.2d 14 [(1957)], where it was held that the filing of a brief by appellant within the time prescribed by Rule 12 of the Revised Rules of the Supreme Court is mandatory.'"
Dexter Serv. Co. v. Thames Lumber Mfg. Co., 281 Ala. at 452, 204 So.2d at 147-48 (quoting Board of Comm'rs of Montgomery v. Crenshaw, 270 Ala. 598, 599-600, 120 So.2d 870, 871 (1960)).
Since the decisions in Skelton and Dexter Service Co. were issued, the Rules of Appellate Procedure have become effective. See Gigandet v. Third Nat'l Bank of Nashville, Tennessee, 333 So.2d 557, 560 (Ala.1976) (recognizing that the Rules of Appellate Procedure became effective December 1, 1975). Rule 31, Ala. R.App. P., requires that a copy of an appellant's brief be served upon opposing counsel within 28 days of the completion of the record, which is the date upon which, excluding any extensions, an appellant's brief is due.[5] Thus, Rule 31 appears to be similar in substance to former Supreme Court Practice Rule 11, upon which the supreme court and the Court of Criminal Appeals relied in reaching their holdings in Dexter Service Co., supra, and Skelton, supra, respectively.
However, the Rules of Appellate Procedure, which replaced the former Practice Rules, contain important distinctions from the rigid requirements of the former Practice Rules. The Rules of Appellate Procedure name only one jurisdictional act, specifically, the necessity of timely filing the notice of appeal; an appeal must be dismissed only for a failure to timely file that notice. Rule 2(a)(1), Ala. R.App. P. However, the rules provide that "[a]n appeal may be dismissed," for, among other reasons, failure to timely file a brief, for failure *244 to prosecute the appeal, or for failure to substantially comply with the Rules of Appellate Procedure. Rule 2(a)(2), Ala. R.App. P. (emphasis added).
Further, the Rules of Appellate Procedure specify that although they may not extend the jurisdiction of the appellate courts, they are to "be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Rule 1, Ala. R.App. P. In addition, "[i]n the interest of expediting decision, or for other good cause shown," an appellate court may suspend any of the requirements of the Rules of Appellate Procedure, with the exception that a court may not extend the time for taking an appeal. Rule 2(b), Ala. R.App. P.
The Committee Comments to the Appellate Rules also indicate that those rules are intended to alter the results reached under strict adherence to the former Practice Rules. The Committee Comments to Rule 1, Ala. R.App. P., provide, in part: "As is the case with the [Alabama Rules of Civil Procedure], it is the policy of these rules to disregard technicality and form in order that a just, speedy and inexpensive determination of every appellate proceeding on its merits may be obtained." (Emphasis added.) Also, the Committee Comments note that the Rules of Appellate Procedure "substantially change" the sanctions imposed for failure to comply with those rules. See Committee Comments to Rule 2, Ala. R.App. P. ("[T]he fact that this rule substantially changes the penalty for noncompliance with the appellate rules should not encourage attorneys to engage in careless appellate practice. In fact, penalties for noncompliance may be imposed.").
Our supreme court has recognized the more lenient approach of the Rules of Appellate Procedure. In Gaines v. Gaines, 472 So.2d 1033 (Ala.1985), the appellee moved to dismiss an appeal on the basis that the appellant had not timely filed his brief in the appellate court. Our supreme court denied the motion to dismiss, explaining that although it could have dismissed the appeal on the basis of the untimely filing of the appellant's brief, "[the appellant] filed a pro se brief, and under Rule 2(b), [Ala. R.App. P.], we accept his reasons for lateness." Gaines v. Gaines, 472 So.2d at 1034.
The former Practice Rules upon which the decisions in Dexter Service Co., supra, and Skelton, supra, are based have been replaced by the Rules of Appellate Procedure. Our supreme court's decision in Gaines v. Gaines, supra, indicates that Dexter Service Co. and Skelton are no longer binding authority. Under the express provisions of the Rules of Appellate Procedure, this court may, but is not required, to dismiss an appeal for noncompliance with any other Rule of Appellate Procedure, see Rule 2(a)(2), Ala. R.App. P., and it may suspend the rules for good cause shown. Rule 2(b), Ala. R.App. P. We recognize that the paper copy specified in the certificate of service was served on the maternal grandparents approximately one month late. However, although service did not comply with the specific terms of the certificate of service contained in the father's brief, the maternal grandparents received a copy via e-mail on March 20, 2008, only one day late. After being granted an extension of the time for filing their appellate brief, the maternal grandparents filed in this court their brief in response to the father's appellate brief.
The facts of this case reveal that the confusion regarding the service of the father's brief constituted an unusual set of circumstances based, to large extent, on a misunderstanding of administrative rules governing electronic filing of appellate briefs. We recognize the difficulties some *245 members of the bar are currently experiencing as the courts of this state incorporate into practice new technologies such as electronic filing. However, this opinion should not to be understood as relaxing the requirements for serving appellate briefs on opposing counsel. See Committee Comments to Rule 2 ("[T]he fact that this rule substantially changes the penalty for noncompliance with the appellate rules should not encourage attorneys to engage in careless appellate practice.").
Our supreme court refused to dismiss an appeal for the failure to timely file a brief in that court. Gaines v. Gaines, supra. In this case, the father's brief was timely filed in this court, but it was not timely served on the other parties. Given the unique facts of this case, we are not inclined to dismiss the appeal based on the technicality of untimely service on the other parties. See Rule 2(a)(2) and Rule 2(b); see also Gaines v. Gaines, supra.
We also decline, based on the arguments presented to this court, to dismiss the appeal on the motion of the guardian ad litem. It does not appear that the secretary for the father's attorney sent an e-mail copy to the guardian ad litem on March 20, 2008, as she did for the maternal grandparents. However, the guardian ad litem has not alleged that the untimely service prejudiced his client. Given the facts, the parties' arguments, and the Rules of Appellate Procedure, we are reluctant to dismiss based on the guardian ad litem's motion. We deny the movants' motions to dismiss this appeal based upon the late service of the appellant's brief, and we proceed to consider the appeal on the merits.

Subject-Matter Jurisdiction
The father first argues that the juvenile court lacked subject-matter jurisdiction over, this matter. The father contends that the maternal grandparents failed to allege facts sufficient to invoke the application of the dependency statute, § 12-15-1 et seq., Ala.Code 1975; we disagree. The maternal grandparents' dependency complaint alleged that the child's mother had been killed; that the father had had only limited contact with the child during the child's life and had failed to support the child; that the father was believed to be a drug addict; and that the father had committed domestic violence against his live-in girlfriend and that, as a result, the Department of Human Resources had initiated an investigation of the father's home. We conclude that those allegations were sufficient to invoke the dependency jurisdiction of the juvenile court to consider the merits of the maternal grandparents' complaint. See L.L.M. v. S.F., 919 So.2d 307, 309-10 (Ala.Civ.App. 2005) ("The alleged facts were sufficient to invoke the jurisdiction of the juvenile court. Therefore, we conclude that the juvenile court properly exercised jurisdiction in this case." (footnote omitted)); W.T.H. v. M.M.M., 915 So.2d 64, 72 (Ala. Civ.App.2005) (the allegations in the dependency complaint implicated certain subsections of § 12-15-1(10), Ala.Code 1975, and "adequately trigger[ed] the juvenile court's jurisdiction").
The father also argues that the juvenile court's September 2, 2005, order awarding the maternal grandparents "custody" of the child was not a "temporary" custody order or a dependency order. The father asserts that as a result of the juvenile court's failure to specifically find the child dependent in its initial custody order, the juvenile court lacked jurisdiction to enter the initial custody order and any subsequent orders. Although the juvenile court referenced the nature of the allegations in the maternal grandparents' complaint, it did not make an express finding *246 of dependency in its two initial custody orders entered on September 2, 2005, and September 16, 2005.
In E.H.Y. v. Covington County Department of Human Resources, 602 So.2d 439 (Ala.Civ.App.1992), the mother argued for the reversal of a judgment because, she alleged, the juvenile court had failed to make a finding pursuant to § 12-15-65(c), Ala.Code 1975, that the children were dependent. This court rejected that argument, stating:
"In its petition, [the Department of Human Resources] alleged that the children were dependent, and the trial court's order found from the evidence presented that DHR's petition should be granted, and that the mother's petition should be denied; accordingly, the trial court's order was sufficient to apprise the mother of the finding of dependency. Thus, no error existed in this regard. Phillips v. Alabama Department of Pensions & Security, 394 So.2d 51 (Ala.Civ. App.1981)."
E.H.Y. v. Covington County Dep't of Human Res., 602 So.2d at 440-41. Also, in J.P. v. S.S., 989 So.2d 591, 598 (Ala.Civ. App.2008), this court held that although the trial court did not make an explicit dependency finding, such a finding of dependency was implicit in the trial court's judgment granting custody to the child's aunt and uncle. See also L.L.M. v. S.F., 919 So.2d at 311 ("Given the factual findings contained in the ... judgment, we conclude that a finding of dependency was implicit in the trial court's judgment."); O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ. App.1999) (holding that, despite trial court's failure to make a finding of dependency, the evidence in the record supported a determination of dependency); and A.J.J. v. J.L., 752 So.2d 499, 503 (Ala. Civ.App.1999) (holding that, when the trial court failed to make finding of dependency, this court would not remand the case when the evidence supported such a finding).
In this case, the maternal grandparents' complaint and motions alleged that the child was dependent, and the juvenile court's initial custody orders awarded them custody based on those allegations. The September 2, 2005, order awarded the maternal grandparents custody "[u]pon consideration of the facts and circumstances listed in [their] Emergency Petition for Custody." The September 16, 2005, order awarding the father and maternal grandparents pendente lite joint custody of the child noted that "[t]his case came before the Court on September 13, 2005, for a pendente lite hearing on the issues of custody and dependency" and that, "[i]n accordance with Rule 24 of the Alabama Rules of Juvenile Procedure,[6] the Court then ensured that all parties had *247 been advised of their rights, including the right to counsel, and that they were aware of the nature of the [maternal grandparents'] Petition and the alternatives available to the Court."
It would have been better practice for the juvenile court to make specific findings of dependency; indeed, a determination whether a child is dependent is required by Rule 25(A), Ala. R. Juv. P. However, on the authority of E.H.Y. v. Covington County Department of Human Resources, supra, and J.P. v. S.S., supra, we cannot say that its failure to do so rendered either of the initial custody orders void for want of subject-matter jurisdiction. Further, the subsequent orders in this matter, including the judgment from which the father appeals, contained findings that the child was dependent. Accordingly, the father has not established that the juvenile court's orders or its December 13, 2007, final judgment were void for want of subject-matter jurisdiction on the basis that they did not contain dependency findings.
We also note that in arguing that the juvenile court was without subject-matter jurisdiction with regard to the initial custody orders, the father contends that there was no "emergency" sufficient to justify the initial custody order entered on the maternal grandparents' emergency complaint. The sufficiency of the evidence supporting those orders, however, is not relevant to the issue whether the juvenile court had subject-matter jurisdiction to enter those orders. Further, the initial orders the father now seeks to challenge are no longer in effect; they were supplanted by later orders in which the juvenile court expressly found the child to be dependent. Thus, "no relief ordered by this court can change" the custody provisions of those initial orders, and, therefore, the argument pertaining to those orders is moot. K.S. v. G.A.B., 911 So.2d 1085, 1095-96 (Ala.Civ. App.2005).
The father also challenges the service of the maternal grandparents' complaint and the notice he received of the initial custody order; the father contends generally that the maternal grandparents failed to "invoke" jurisdiction over him by failing to provide him advance notice of their emergency dependency complaint. In making that argument, the father also argues that the facts did not support a conclusion that an emergency order was necessary. However, those issues do not pertain to subject-matter jurisdiction, and, because they related to the initial custody order, we cannot address those issues as a part of this appeal from the final judgment.

Evidentiary issues
The father next raises several evidentiary issues. He contends that the juvenile court erred in allowing the testimony of Patti Shaw Gilliland, a therapist who works for the Child Advocacy Center and who conducted counseling with the child. Gilliland testified, among other things, that based on her conversations with the child and the history the maternal grandmother provided, she believed it was in the child's best interests to be placed with the maternal grandparents. The father argues that Gilliland's testimony should be excluded as being impermissibly based on hearsay evidence, specifically, statements made to her by the child.
The father relies on S.J.R. v. F.M.R., 933 So.2d 352 (Ala.Civ.App.2004). In that case, the trial court appointed a licensed professional counselor to make a recommendation concerning custody of the child. The mother argued, among other things, that the counselor's opinions should be excluded because they were based on hearsay statements made by the child. This court considered whether the child's statements *248 to the counselor could be construed as an exception to the hearsay rule under Rule 803(4), Ala. R. Evid., which exception encompasses "[s]tatements made for purposes of medical diagnosis or treatment...." This court concluded that the Rule 803(4) exception did not apply to the facts of that case, reasoning that the counselor's opinions were "not made for the purpose of `medical diagnosis or treatment.'" S.J.R. v. F.M.R., 933 So.2d at 360. The court explained that the child's statements to the counselor "were made so that [the counselor], who was not a medical practitioner, could assess the child's behavioral problems and make a recommendation to the trial court as to custody." Id.
In this case, however, the evidence indicates that the purpose of the child's counseling sessions with Gilliland were for treatment. Although Gilliland ultimately made a custody recommendation, the purpose of the child's therapy sessions with Gilliland was not, as it was in S.J.R. v. F.M.R., supra, designed primarily for an evaluation of the child for a custody recommendation. We note that in S.J.R. v. F.M.R., supra, this court stated that it did not, for the purposes of that case, need to determine "whether a child's statements made to persons other than a physician might, under appropriate circumstances, fall within the Rule 803(4) exception," i.e., whether statements to a therapist or counselor came within that exception. S.J.R. v. F.M.R., 933 So.2d at 360. In this case, the father has not made an argument on that issue to this court, nor did he argue to the juvenile court that Gilliland's testimony should be excluded on that basis. Accordingly, we do not address the issue.
Further, in a dispositional hearing such as the final hearing in this matter, hearsay and other evidence may be considered by the juvenile court.
"(h) In disposition hearings all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports."
§ 12-15-65(h), Ala.Code 1975; see also D.S.S. v. Clay County Dep't of Human Res., 755 So.2d 584, 587 (Ala.Civ.App.1999) ("The hearsay in the documentary report was admissible by virtue of § 12-15-65(h)."). We cannot say that the father has demonstrated, through his arguments to this court, that the juvenile court erred in allowing Gilliland's testimony.
The father also argues that the juvenile court should have disallowed Gilliland's testimony because he was not provided, until shortly before or at the final hearing, information regarding the substance of her testimony or access to her treatment notes and records. He also argues that the testimony of Cindy Hernandez, the Court Appointed Judicial Advocate, was inadmissible for a number of reasons and that the testimony of one of the mother's friends concerning a conversation she had with the mother was inadmissible hearsay. However, the father has cited no authority in support of those arguments; accordingly, we affirm as to those issues. See Roberts v. NASCO Equip. Co., 986 So.2d 379, 387 (Ala.2007), citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001); City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998); and Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala.1993).

*249 Guardian ad Litem's Report

The father also argues that the juvenile court erred in allowing the guardian ad litem to submit his recommendation to the juvenile court after the close of the evidence presented at the final, dispositional hearing. The father argues that under the authority of Ex parte R.D.N., 918 So.2d 100 (Ala.2005), the guardian ad litem should not have been allowed to make a recommendation regarding the issues of dependency, custody, and visitation because the guardian ad litem was not present at the final, dispositional hearing.
In Ex parte R.D.N., supra, the guardian ad litem made no custody recommendation either immediately before or during the final, 2002 hearing on the merits of a father's custody-modification petition. However, in an earlier hearing, the guardian ad litem had made statements critical of the father and had indicated that she sided with the mother. In addition, the guardian ad litem represented in her brief submitted to the supreme court that "she had had a private conference with the trial judge in the summer of 1999 and at that time recommended that custody of the child remain with the mother." Ex parte R.D.N., 918 So.2d at 102; see also id. at 104-05 n. 4. The trial court denied the petition to modify custody; in doing so, it ruled in contravention of the recommendation of the court-appointed counselor. This court affirmed without an opinion. See R.D.N. v. A.M.N. (No. 2020447, Feb. 20, 2004), 912 So.2d 1163 (Ala.Civ.App. 2004) (table).
On certiorari review, our supreme court reversed. The supreme court noted that the "guardian ad litem's recommendation that the child remain with the mother was not presented as evidence produced in open court and was based on information that may or may not have been properly presented to the court." 918 So.2d at 104. The supreme court also determined that neither party had had the opportunity to examine the guardian ad litem or to present evidence in support of or contradicting her recommendation. Therefore, the court concluded that it could not say that the father's rights had not been prejudiced. Ex parte R.D.N., 918 So.2d at 105. Accordingly, the supreme court held that the ex parte communication between the guardian ad litem and the trial court had violated the father's rights to procedural due process. Id.
In this case, the guardian ad litem was present for the hearings that occurred before the final hearing on the merits. The guardian ad litem had also interviewed the parties and numerous witnesses. However, due to scheduling conflicts, the guardian ad litem was present in the courtroom for only a few minutes of the first day of the October 2007 hearing on the merits, and he missed the entire second day of the final hearing due to illness.[7] As the father pointed out to the juvenile court at the close of the hearing, the guardian ad litem had missed the presentation of the father's case and the testimony of the witnesses called to testify on behalf of the father.
At the close of the final day of testimony, the juvenile court gave the parties permission to submit written arguments or letter briefs. The maternal grandparents submitted a letter brief to the juvenile court on November 6, 2007, and the father submitted his letter brief on November 7, 2007. The guardian ad litem also submitted a letter, dated November 6, 2007, to the juvenile court in which he opined that the child was dependent and in which he *250 recommended that the maternal grandparents receive custody of the child. The guardian ad litem's recommendation states:
"As the Court is well aware, I was unable to attend all of the final hearing due to illness. I was made aware by [the maternal grandparents'] counsel that all parties stipulated to going forward with the hearing in my absence. As a result, I cannot give a recommendation based on the merits of the final hearing. However, I have been present at every other hearing conducted by this Honorable Court. I have also had many opportunities to meet with the parties and their attorneys in this matter. I have also conducted my own investigation regarding the best interests of the minor child. I believe I have obtained enough knowledge of this matter to make a recommendation to this Court."
The father argues that the supreme court's holding in Ex parte R.D.N., supra, dictates that a guardian ad litem must be subject to cross-examination in order to allow his or her recommendation to the juvenile court. He also contends that, in relying on his own investigation and evidence from earlier hearings, the guardian ad litem in this case based his recommendation on information and evidence that was not properly before the juvenile court in the final hearing.
Ex parte R.D.N., supra, does not require that the parties be allowed to cross-examine the guardian ad litem regarding the basis for his or her recommendation. Rather, Ex parte R.D.N., supra, involved peculiar factsthe trial court disregarded the recommendation of a court-appointed expert in favor of the recommendations of the guardian ad litem, one of which had been made three years before the final hearing during an ex parte communication. This case does not involve ex parte communications between the guardian ad litem and the juvenile court. The guardian ad litem, at the request of the juvenile court after arguments on the issue by the parties, submitted a recommendation by letter. The guardian ad litem's recommendation was also properly served on counsel for the parties.
However, in this case, as in Ex parte R.D.N., supra, the guardian ad litem apparently formed his opinion before the case was presented at trial. In Ex parte R.D.N., our supreme court found that the trial court's reliance on the guardian ad litem's recommendation, which was not based on any consideration of the evidence presented at the final hearing, resulted in a deprivation of the father's "right to contest the accuracy, substance, impartiality, and quality of the guardian ad litem's recommendation." Ex parte R.D.N., 918 So.2d at 105. On the authority of Ex parte R.D.N., supra, we must similarly conclude that the juvenile court erred in considering the recommendation of the guardian ad litem when the guardian ad litem was not present at, and therefore could not consider the evidence presented at, the final hearing.
The court in Ex parte R.D.N., supra, also concluded that the facts of that case resulted in prejudice to the father. In this case, the guardian ad litem's recommendations that the child be determined dependent and that custody be awarded to the maternal grandparents were consistent with the opinions of the expert witnesses. However, no expert witness made a recommendation regarding the father's visitation with the child. The guardian ad litem's visitation recommendation is substantially similar to the visitation award contained in the juvenile court's December 13, 2007, judgment. Also, the guardian ad litem's recommendation to the juvenile court contains two date stamps, one reading November *251 6, 2007, the other reading December 13, 2007, the same date as the juvenile court's judgment; that letter is contained in the record immediately preceding the juvenile court's judgment in favor of the maternal grandparents. Thus, it appears that the juvenile court, in refiling the recommendation of the guardian ad litem at the same time it filed its judgment, relied on that recommendation in reaching its dependency finding and its custody and visitation awards. Given the foregoing, we cannot say that the father's rights were not prejudiced by the juvenile court's improper consideration of the guardian ad litem's recommendation. See Ex parte R.D.N., 918 So.2d at 105.
Accordingly, we reverse the judgment and remand this cause for the juvenile court to reconsider the evidence without reference to the guardian ad litem's recommendation. Because we are remanding the cause for a reexamination of the evidence with regard to the issues referenced in that recommendation, i.e., dependency, custody, and visitation, we pretermit discussion of the father's arguments that the evidence presented at the final hearing did not support the juvenile court's dependency determination or custody award and that the juvenile court erred in fashioning its visitation award.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in part and concurs in the result in part, with writing.
MOORE, Judge, concurring in part and concurring in the result in part.
I fully concur in those parts of the main opinion denying the motions to dismiss the appeal and reversing the juvenile court's judgment for considering the posttrial recommendation of the guardian ad litem. I also concur in that portion of the main opinion refusing to consider those evidentiary arguments raised by M.B. ("the father"), but made without citation to legal authority. I concur in the result as to that part of the main opinion holding that the juvenile court had subject-matter jurisdiction and that the juvenile court did not err in admitting the testimony of Patti Shaw Gilliland over the father's hearsay objection.

Subject-Matter Jurisdiction
The father argues that the juvenile court lacked subject-matter jurisdiction to enter its September 2, 2005, order, and, thus, that all subsequent custody orders, including the final December 13, 2007, judgment, are void. I reject the father's argument, but for reasons different from those set out in the main opinion.
In addressing the father's argument, the starting off point requires consideration of the matters adjudicated in the September 2, 2005, order. Unfortunately, due to our own precedent, we are left to a great deal of guesswork on that point. It would be simple to determine if the juvenile court relied on its dependency jurisdiction by merely referring to the order to see if it expresses a finding of dependency. However, this court long ago decided that a written finding of dependency is not required when that finding may be inferred from the judgment. See, e.g., E.H.Y. v. Covington County Dep't of Human Res., 602 So.2d 439 (Ala.Civ.App.1992); and Phillips v. Alabama Dep't of Pensions & Sec., 394 So.2d 51 (Ala.Civ.App.1981). Thus, this court has, perhaps unwittingly and certainly unjustifiably, placed upon itself the difficult task of determining when a juvenile court's judgment implies a finding of dependency and when it does not.
*252 Alabama Code 1975, § 12-15-65(d), requires a juvenile court to "record" its findings of dependency, and Rule 25(A)(1), Ala. R. Juv. P., states that
"[a]t the close of the hearing the court shall make one of the following findings in a docket entry or written order:

"(1) that the facts alleged in the petition are true and the child is dependent, in need of supervision, or delinquent and is in need of care or rehabilitation...."
I do not think it is simply a "better practice" for a juvenile court to record in writing a finding of dependency, 3 So.3d at 247; it is an absolute requirement, as the imperative terms of the applicable statute and rule clarify. See Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (quoting Black's Law Dictionary 1375 (6th ed. 1991)) ("`As used in statutes, contracts, or the like, [the word "shall"] is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means "must" and is inconsistent with a concept of discretion.'").
Written findings of fact serve the dual purposes of compelling the juvenile court to reflect on the magnitude, certainty, and correctness of its decision and to crystallize for this court the basis for its judgment. See Ex parte Vaughn, 495 So.2d 83, 87 (Ala.1986) (concluding that written findings of fact "permit the trial judge an opportunity to carefully review the evidence" and to "correct any error in judgment which he or she may have made upon initial review" and "perfect the issues for review on appeal").
A clear finding of dependency is essential to a juvenile court's judgment because that finding marks the point at which the state's interest in protecting the child from harm has overcome the parent's fundamental right to the care, custody, and control of the child. See J.W. v. N.K.M., 999 So.2d 526, 540 (Ala.Civ.App.2008) (Moore, J., dissenting). Following a finding of dependency, a juvenile court may, over the objection of the parents of the child and based on its own notions of what is in the child's best interests, remove the child from its home and transfer the custody of the child to any person or entity the juvenile court finds to be qualified to receive and care for the child. See Ala.Code 1975, § 12-15-71(a). Thereafter, the juvenile court may monitor the custodian to assure that the best interests of the child, as understood by the court, are being served. See Ex parte Montgomery County Dep't of Human Res., [Ms. 2070163, May 23, 2008] ___ So.3d ___, ___ (Ala.Civ.App.2008). Therefore, the juvenile court should be required to make a written finding confirming the dependency of the child.
A written finding of dependency further promotes judicial efficiency by precluding precisely the sort of exercise this court has been forced to undergo in this case. Because the juvenile court did not make any express finding one way or the other regarding dependency, this court has spent considerable time and resources simply to determine if the juvenile court adjudicated the issue of dependency. The court is divided on that issue, and many pages of the main opinion and this special writing are devoted to defending the opposing positions. Requiring a clear written finding of dependency would obviate that problem in most cases.
For the foregoing reasons, I would overrule those cases excusing a juvenile court from complying with § 12-15-65(d) and Rule 25(A)(1). However, because my opinion is in the minority, I undertake the arduous task of ascertaining whether a *253 finding of dependency may be implied from the juvenile court's September 2, 2005, order.
In J.P. v. S.S., 989 So.2d 591 (Ala.Civ. App.2008), this court held
"that when the evidence in the record supports a finding of dependency and when the trial court has made a disposition consistent with a finding of dependency, in the interest of judicial economy this court may hold that a finding of dependency is implicit in the trial court's judgment."
989 So.2d at 598 (citing L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005), O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App. 1999), and A.J.J. v. J.L., 752 So.2d 499, 503 (Ala.Civ.App.1999)). Putting aside for the moment the question whether the record on September 2, 2005, supported a finding of dependency, the juvenile court did not make "a disposition consistent with a finding of dependency." Although the juvenile court initially awarded sole custody of the child to the maternal grandparents on September 2, it subsequently modified its September 2 order on September 16 to award the maternal grandparents joint custody of the child with the father, who received unsupervised and unrestricted physical custody of the child for two weeks of every month. That disposition totally contradicts any implication that the juvenile court found that the child was dependent due to the inappropriate conduct of the father, as alleged in the maternal grandparents' petition. See generally Lawrence v. Cannon, 998 So.2d 1070, 1072 (Ala.Civ. App.2008) (noting that award of joint custody is inconsistent with finding of parental unfitness).
In both E.H.Y., supra, and Phillips, supra, the court inferred a finding of dependency from the fact that the dependency petition in each case sought a change in the custody of the child based solely on the grounds of dependency and the juvenile court stated that it found the allegations of the petition to be true. Naturally, if the petitioner asserts only one ground for obtaining custody of the child, and that ground is the dependency of the child, an order awarding custody based upon the truthfulness of the facts as alleged in the petition equates to a finding of dependency. However, if the petition alleges alternative grounds for custody, including but not limited to the dependency of the child, then an order awarding custody does not necessarily implicate a finding of dependency.
In this case, unlike in E.H.Y. and Phillips, the maternal grandparents did not seek custody based solely on the juvenile court's dependency jurisdiction. In their petition, the maternal grandparents alleged the various facts set out in the main opinion, see ___ So.3d at ___, and further requested that "[the child] be declared dependent for custody purposes" and that the juvenile court enter an emergency order awarding them custody of the child "in order to protect the well being of the child." Based on the relief requested, see Garris v. Garris, 643 So.2d 993, 995 (Ala. Civ.App.1994) ("The relief sought within the pleading governs, and the nomenclature of the pleading is not controlling."), the maternal grandparents sought both a dependency adjudication and instant custody of the child for protective purposes.
The first request invoked the juvenile court's dependency jurisdiction under Ala. Code 1975, § 12-15-30(a) ("The juvenile court shall exercise exclusive original jurisdiction of proceedings in which a child is alleged to be delinquent, dependent or in need of supervision."). The second request invoked the juvenile court's emergency jurisdiction under Ala.Code 1975, § 12-15-153, which provides:

*254 "The court may enter a protection or restraint order on an emergency basis, without prior notice and hearing, upon a showing of verified written or oral evidence of abuse or neglect injurious to the health or safety of the child and the likelihood that such abuse or neglect will continue unless the order is issued. If an emergency order is issued, a hearing, after notice, must be held within 72 hours or the next judicial business day thereafter, to either dissolve, continue or modify the order."
Because of the alternative bases pleaded by the maternal grandparents, the award of custody to the maternal grandparents "[u]pon consideration of the facts and circumstances listed in [the maternal grandparents'] Emergency Petition for Custody" did not necessarily imply a finding of dependency.
Furthermore, the main opinion's conclusion that the juvenile court had jurisdiction pursuant to § 12-15-30(a) to enter the September 2 order indicates that a juvenile court may find a child dependent in an ex parte proceeding. It is undisputed that the juvenile court entered its September 2 order based solely on the petition filed by the maternal grandparents and their affidavits, which tracked the language in the petition verbatim. The juvenile court did not provide notice to the father of the petition or conduct a hearing wherein the father received an opportunity to contest the petition. As the father correctly points out, nothing in the law enables a juvenile court to find that a child is dependent and award custody to another private party without notice to the parents. In fact, the law specifically requires that the parents be notified and be given an opportunity to be heard before entry of a judgment finding the child dependent. See § 12-15-53, Ala.Code 1975 (requiring service of petition and summons on parents in dependency cases); § 12-15-63, Ala.Code 1975 (requiring court to advise parents of right to counsel); § 12-15-65, Ala.Code 1975 (governing trial procedure in dependency cases); Rule 13, Ala. R. Juv. P. (requiring service and notice of hearings in dependency cases); and Rule 24, Ala. R. Juv. P. (detailing conduct of hearings in dependency cases). I disagree with any suggestion that the juvenile court has jurisdiction under § 12-15-30(a) to transfer custody of a child to a private party following an ex parte proceeding; therefore, I cannot concur in the main opinion's conclusion that the juvenile court was exercising its dependency jurisdiction in entering the September 2 order.
However, I do not agree with the father that just because the juvenile court lacked jurisdiction under § 12-15-30(a) to enter the September 2 order, it had no subject-matter jurisdiction. As set out above, § 12-15-153 specifically authorizes a juvenile court, upon receipt of the appropriate verified evidence, to enter an emergency ex parte order transferring custody to a private party in order to protect the child from abuse or neglect. See K.S. v. G.A.B., 911 So.2d 1085, 1096 (Ala.Civ.App.2005). The record reveals that the maternal grandparents filed affidavits contemporaneously with their petition that tracked the allegations in the petition verbatim. Those affidavits verified that "based upon information and [the] belief" of the maternal grandparents, the child was being subjected to abuse or neglect injurious to the child's health and safety. See Harper v. J & C Trucking & Excavating Co., 374 So.2d 886, 890-92 (Ala.Civ.App.1978) (holding that affidavit based upon information and belief was sufficient to verify facts under materialmen's lien statute). The juvenile court clearly exercised its jurisdiction under § 12-15-153 in entering the September 2 order.
*255 Any doubt as to the juvenile court's intent is resolved when considering its statements at the September 13 hearing in which the father sought to dissolve the September 2 order.[8] At the outset of the hearing, the juvenile court stated, consistent with the last sentence of § 12-15-153, that the only issue to be decided at that time was "whether or not to vacate the emergency and ex parte order" entered on September 2. The juvenile court then granted each side 30 minutes to present their cases "because this is a temporary matter, temporary custody, to present what it is you need to show me of why either I should keep the temporary order in effect or I should set it aside and change custody back to the father." At one point during the hearing the juvenile court clarified that the purpose of the hearing was to decide
"what's best for the child right now until you can have a further hearing. That's all this is about, is on a temporary order do I need to dissolve this emergency petition where one part of the family has got the child away from the other family and what relief, if any, do I need to do until I can have a further hearing.... So it's not a trial on the merits. This is only an emergency hearing."
Those statements solidify the position that the juvenile court was exercising its emergency jurisdiction under § 12-15-153.[9]
I agree with the father that the juvenile court erred in awarding any custody to the maternal grandparents because they did not prove during the September 13 hearing that the child was being subjected to abuse or neglect injurious to his health and safety. However, that error does not affect the juvenile court's subject-matter jurisdiction, as the father argues. See Ex parte Butler, 972 So.2d 821, 825 (Ala.2007) ("Subject-matter jurisdiction concerns a court's power to adjudicate a case, not the merits of the court's decision in the case."). The juvenile court had the power to adjudicate the petition of the maternal grandparents under § 12-15-153; that it adjudicated the petition incorrectly does not mean it never had the power to act.[10]
Because his premise that the juvenile court lacked subject-matter jurisdiction to enter the September 2005 orders is incorrect, the father's conclusion that all the juvenile court's subsequent orders are void necessarily fails. I nevertheless point out that the father did not cite any legal authority to support his argument or his conclusion. See Alexander v. Alexander, 985 So.2d 490, 493 (Ala.Civ.App.2008) (holding that appellate court may affirm *256 judgment of lower court on issue appellant argues without citation to legal authority in contravention of Rule 28(a)(10), Ala. R.App. P.). If the juvenile court lacked jurisdiction to transfer custody of the child in September 2005, the father has not explained how that lack of jurisdiction would have prohibited the juvenile court from later exercising its lawful jurisdiction under § 12-15-30(a) to find the child dependent and transfer custody according to the best interests of the child.
For the foregoing reasons, and those reasons alone, I concur that none of the orders or judgments entered by the juvenile court are void for lack of subject-matter jurisdiction.

Admissibility of Gilliland's Testimony
I agree that the juvenile court did not err in admitting the opinion of Patti Shaw Gilliland that it was in the child's best interest to be placed with the maternal grandparents. The record reveals that the juvenile court adjudicated the dependency of the child and disposed of the child's custody in the same hearing, as authorized by Rule 25, Ala. R. Juv. P. ("At any hearing other than to transfer to another court, the court may handle all matters at one time or in phases."). During that hearing, the juvenile court admitted Gilliland's opinion testimony, which was based on hearsay statements of the child and others. Alabama Code 1975, § 12-15-65(h), authorizes receipt of that evidence over a hearsay objection in the dispositional phase of the case. Finding nothing to indicate that the juvenile court improperly used that evidence in the adjudicatory phase, I agree that the juvenile court did not err in any respect in overruling the father's objection.
Because § 12-15-65(h) controls the issue, I see no reason to discuss whether the admission of Gilliland's testimony violates S.J.R. v. F.M.R., 933 So.2d 352 (Ala.Civ. App.2004), which is not a juvenile case. Therefore, I do not join in any aspect of the main opinion discussing that case. I point out further that nothing in the main opinion's discussion should be construed as holding that a statement made to a therapist for treatment purposes may be admissible under Rule 803(4).
NOTES
[1] The record does not define or explain the nature of "Level II CRO" classes.
[2] The paternal grandparents are listed as appellees on the father's notice of appeal; however, they have joined in the father's brief on appeal.
[3] No affidavits supported the movants' motions to dismiss. The father argues to this court that the movants' motions to dismiss should be denied on the basis that the movants failed to submit evidence to support the allegations contained in their motions to dismiss. However, the representations set forth in those motions were made by the movants' attorneys as officers of the court. In Oliver v. Townsend, 534 So.2d 1038 (Ala. 1988), the attorney responding to a summary-judgment motion represented that additional discovery was necessary in order to properly oppose the motion. Our supreme court held that although the attorney did not file an affidavit to that effect, no such affidavit was necessary because the attorney was an officer of the court. In reaching that holding, the court relied on Rule 11, Ala. R. Civ. P., which provides, in pertinent part:

"The signature of an attorney constitutes a certificate by the attorney that the attorney has read the pleading, motion, or other paper; that to the best of the attorney's knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay. If a pleading, motion, or other paper is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading, motion, or other paper had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."
The court also explained:
"We do not mean to imply that substantive facts can be established simply by an attorney's signature on a brief. The matters represented here relate only to procedural matters not otherwise reflected in the record  i.e., the July 17 letter was simply mailed to the judge, not filed, and the August 3 hearing was not transcribed."
Oliver v. Townsend, 534 So.2d at 1042.
Also, in this case, the facts asserted in the movants' motions to dismiss were reiterated by similar representations made in the father's motion in opposition and in evidentiary materials he submitted in support of his position. Accordingly, we conclude that, in this case, the representations of counsel and the evidence presented are a sufficient basis upon which to reach our ruling.
[4] That rule read, in pertinent part:

"Each brief shall be signed by the party filing the same or his attorney and shall contain a certificate at the end thereof, signed by the party or his attorney, that a copy thereof has been delivered or mailed to one of the attorneys for the opposing party, if represented by counsel, or to the opposing party if not so represented and his address is known; and the certificate shall show the date of such delivery or mailing and the person to whom delivered or mailed."
[5] Rule 31(a), Ala. R.App. P., provides, in pertinent part:

"(a) Time for Serving and Filing Briefs. In civil cases, the appellant shall serve and file the appellant's brief within 28 days (4 weeks) after the date shown on the copy of the certificate of completion of the record on appeal, served on the appellant by the clerk of the trial court, as required by Rule 11(a)(3)."
(Emphasis added.) Subsection (b) of Rule 31 provides, in part: "One copy of the brief shall be served on counsel for each party separately represented and, if a party does not have counsel, then one copy shall be served upon that party personally." (Emphasis added.)
[6] The rule referenced in the juvenile court's order provides, in part:

"(B)(1) If all parties are represented by counsel, the court shall inquire whether counsel has explained to them the substance of the petition[;] the specific allegations contained in the petition; the nature of the proceedings; the rights of the parties during the proceedings; and the alternatives available to the court should the allegations of the petition be admitted or proven; if counsel has explained these things to all parties, the court shall note that fact on the record.
"(B)(2) If a party has counsel but counsel has not explained those things to him or her, or if a party is not represented by counsel, then the court shall explain to that party the substance of the petition; the specific allegations contained in the petition; the nature of the proceedings; the rights of the parties during the proceedings; and the alternatives available to the court should the allegations of the petition be admitted or proven."
[7] We note that as the advocate for the child, the guardian ad litem could have moved to continue the final hearing until such time as he was available to attend.
[8] The hearing actually should have taken place on September 6, 2005, the day after Labor Day, because § 12-15-153 requires a hearing to take place within 72 hours of the emergency order or the next judicial business day after the 72-hour period in order to determine whether the order should be dissolved, modified, or continued. However, the father does not raise that error in his appeal.
[9] Although the juvenile court described the hearing as one related to "dependency and custody" in its September 16 order, in that same order it later more accurately stated that the only issue tried was "whether to vacate and set aside the ex parte custody order." See Lester v. Scarbrough, 668 So.2d 35 (Ala.Civ.App.1995) (court may consider parol evidence in construing ambiguous judgment).
[10] The father does not argue that the September 2 and September 16 orders should be vacated for any reason other than for lack of subject-matter jurisdiction. Having found that the juvenile court had subject-matter jurisdiction, I would pretermit any further discussion regarding those judgments. Thus, while I do not necessarily disagree with the main opinion's conclusion that any other argument regarding those judgments would be moot, ___ So.3d at ___, I do not join that aspect of the main opinion.