292 So.2d 656

**DOTHAN–HOUSTON COUNTY AIRPORT AUTHORITY, INC.**

**v.**

**C. E. HORNE et al.**

**SC 436, 436A, 436B.**

Supreme Court of Alabama.

April 4, 1974.

---

C. R. Lewis, Dothan, for appellant.

Charles L. Woods, Ozark, for appellees.

JONES, Justice.

These are three consolidated appeals arising out of awards of compensation to the property owners in condemnation proceedings brought by Dothan-Houston County Airport, Appellant. The assignments of error—raising the sole issue dispositive of each appeal—claim error in the overruling of motions for new trials on the ground of excessiveness of the verdicts. Finding no error to reverse, we affirm.

The facts are simple. The property owners' property lies at the very end of one of the jet runways; and, in ascending

and descending, the planes travel on an angle 30–60 feet from the surface over plaintiffs' property. It is the air space above the line formed by this angle which the Airport sought to condemn. This is known as an avigation easement. It is not a fee but a perpetual right of use. The only right of access acquired to the surface is the right to go onto the property and cut the top of the trees at the low point of the easement acquired, which in itself does little or no harm to the property; and the property owners do not contend otherwise.

Two points are contended by the property owners as affecting the "before and after" value of their property caused by the low-flying aircraft:

1. Improvements are limited to one story.

2. The use and enjoyment of the property is materially affected by the noise and vibration.

Involved are three tracts of land consisting of approximately four acres, three acres, and one acre, respectively. Only tract three has improvements of any substantial value—a reasonably modern seven-room residence. Expert testimony on behalf of the Airport is to the effect that each of the tracts is mere rural property best suited for farming, and that the avigation easement constitutes only nominal depreciation in value. None of the Airport witnesses went onto the property, witnessed the air space in use, or talked with any of the residents in the immediate area concerning the noise or vibration caused by the planes. They merely rode by and viewed it from their cars; and each admitted that the only element of damage which he took into account in arriving at his estimate of depreciated value was the fact that the easement gave the Airport the right to come onto the property and cut the tree tops that protruded into the condemned space.

The property owners' expert testimony takes the position basically that the proper-ties' best and highest use is for industrial and commercial purposes. Lay witnesses, neighbors, also describe in rather vivid detail the annoyance and inconvenience caused by the coming and going of aircraft just over their roof tops.

The appellant in an excellent brief, under "Statement of the Facts," summarizes the testimony of an adjoining landowner thusly:

"I have been living there for 29 years and I am definitely aware of the air traffic over my home and the home of Mrs. Horne. It's hard to describe what happens when a jet aircraft or other aircraft flies over my property to land on the north-south runway. First of all, it effects the way of tension in your body, the noise is unbearable, the dishes in the kitchen rattle, the windows rattle, and there is no such thing as watching TV or carrying on a normal conversation with anyone. We've had windows cracked and plumbing trouble caused by the airplanes. They cause our pictures to be disarranged and there's smoke damage. Over a period of time it's especially bad on the windows and it's very hard to clean and it's very noticeable on the paint work of the house. Very often the lights of approaching planes shine right in our bedroom and, of course, the noise will awaken you."

The highest estimate of the total difference in the "before and after" value of all three tracts given by any witness on behalf of the Airport is $8,900, and the lowest is $2,500. The lowest such estimate on behalf of the property owners is $33,000 and the highest is $81,467. The jury, under supervision of the Court, was permitted to view the property in question.

The verdicts are:

| | |
|---|---|
| Tract #1 | $24,000 |
| Tract #2 | 6,000 |
| Tract #3 | 11,500 |
| TOTAL | $41,500 |

■ Our research discloses that this is the first avigation easement case ever reviewed by this Court.[1] The record of the proceedings below reveals that the trial Court applied, and we think correctly, the well-established principles governing the measure of damages in eminent domain cases generally.[2]

■ The alleged error on the ground of excessiveness of the verdicts invokes two equally well-established rules of appellate review: (1) The action of the trial Court in overruling a motion for a new trial is due to be affirmed unless the verdict is unsupported by competent evidence, or (2) that the verdict is against the preponderance of the evidence or is palpably wrong and manifestly unjust. Renfroe v. Weaver, 285 Ala. 1, 228 So.2d 764 (1969).

These two rules (or, perhaps more accurately, two aspects of the same rule) must be applied in the context of condemnation cases where the verdicts are well within the outer ranges of the "before and after" evaluations.

In State v. Burroughs, 285 Ala. 177, 230 So.2d 235 (1970), in which the jury had heard testimony by condemnor's witnesses that the difference in value after the taking was between $1,880 and $2,600, and testimony by condemnee's witnesses for between $15,000 and $22,000, before awarding a judgment for $18,000, Justice Simpson stated the proposition that:

"Where there is a conflict as to the amount of damages sustained as a result of condemnation procedures, a presumption will be indulged in favor of the findings made at the trial level. [Cases cited omitted.] Here the amount of the award was peculiarly the prerogative of the jury to determine."

Such weight is given the jury's determination of damages that the only instances in which this Court has ruled condemnation awards excessive are those in which the awards have been greater than any testimony adduced. State v. Walker, 281 Ala. 182, 200 So.2d 482 (1967); State v. Crawford, 277 Ala. 568, 173 So.2d 109 (1965). Likewise, where the award is lower than the lowest amount fixed by the testimony, no error is committed in the granting of a motion for a new trial. State v. Edmundson, 282 Ala. 293, 210 So.2d 926 (1968).

■ Where the verdicts and the judgments entered thereon, as in these cases, are supported by competent evidence, we cannot say that these verdicts were reached on account of bias, passion, corruption or other improper motive or cause. Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958); Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447 (1932).

■ Nor can we say that the awards are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of the merits of the case. See National Surety Co. v. Mabry, 139 Ala. 217, 35 So. 698 (1903).

■ Moreover, the presumption of correctness of the jury's verdict is strengthened when the jury itself viewed the land in question. Gordon v. State, 273 Ala. 213, 137 So.2d 752 (1962); State v. Long, 269 Ala. 270, 112 So.2d 480 (1959). We are unwilling to substitute our subjective judgment for that of the jury.

The assignments of error raises one additional point worthy of our consideration. The Airport contends that the trial Court erred in sustaining objection to the following question on cross examination of the property owner: "And in so assessing, did you sign the tax assessment sheets when

---

1. For excellent treatises in this field, see East, Avigation Easements, and Clearance Easements, 25 Baylor L.Rev. 511 (1973); and Bohannon, Airport Easements, 54 Va.L.Rev.

355 (1968). See also United States v. Brondum, 272 F.2d 642 (5th Cir., 1959).

2. See Alabama Pattern Jury Instructions— Civil, Eminent Domain 14.00.

you swore as to the value of the property?"

Appellant contends that where the tax assessment records show that the property owner participated in the fixing of value, or swore as to the value of subject property for purposes of taxation, evidence of such action is admissible on cross examination, not as proof of value, but as an admission against interest. While this is a correct statement of the rule (Dean v. County Board of Education, 210 Ala. 256, 97 So. 741 (1923), it does not support this contention of error in the instant context as urged by appellant. The question posed assumes a fact not in evidence: viz., " . . . when you swore as to the value of the property?" The 1951 Revenue Code (Title 51, Code of Alabama 1940, as amended) prescribes the precise language of the oath to be administered before the return is made (§ 40), as well as the oath to be used on the bottom of the assessment sheet (§ 43); and neither of these oaths contains any language "as to the value of the property." Indeed, § 45 states, " . . . but nothing in this title shall be construed as requiring the taxpayer to make oath as to the value of the property." See also McElroy, Law of Evidence in Alabama, V. 2, pp. 314–315.

By virtue of this statute, then, the two parts of the question (i.e., 1. "Did you sign the assessment sheets?" and 2. "when you swore to the value?") are incongruous; and, therefore, the Court did not err in sustaining the objection.

Affirmed.

MERRILL, BLOODWORTH, McCALL and FAULKNER, JJ., and LAWSON, Supernumerary Judge, concur.

HEFLIN, C. J., and COLEMAN and MADDOX, JJ., concur in result.