675 So.2d 350 (1995)
HISTORIC BLAKELY AUTHORITY
v.
Norvie WILLIAMS, et al.
1940737.
Supreme Court of Alabama.
September 22, 1995.
As Modified on Denial of Rehearing December 15, 1995.
H. William Wasden and Jean Walker Tucker, Mobile, for appellant.
Donald D. Doerr, Jr., Bay Minette, and James D. Smith, Stapleton, for appellees.
BUTTS, Justice.
The Historic Blakely Authority brought a condemnation action in the Probate *351 Court of Baldwin County against Norvie Williams and others (hereinafter referred to collectively as "Williams"), seeking to exercise the power of eminent domain over four acres of real property owned by Williams.
After a preliminary ruling establishing that the Authority had the right to exercise the power of eminent domain over the property, the probate court condemned the property and assessed compensation of $32,000 for Williams. Williams appealed to the Circuit Court of Baldwin County; that court entered a partial summary judgment for the Authority on the issue of its authority to condemn the land under the doctrine of eminent domain.
The case proceeded to trial on the sole issue of the fair market value of the land, and a jury returned a verdict assessing compensation at $88,500. The Authority moved for a new trial, requesting oral argument; this motion was denied by operation of law, pursuant to Rule 59.1, Ala.R.Civ.P. The Authority appeals.

I.
The Authority was established by the state legislature to "establish, develop, operate, promote, protect, preserve, and maintain as a state historic park" a 2000-acre tract of woodland listed on the National Register of Historic Places and known as the "Blakely site." Ala.Code 1975, § 41-10-170. The park is designed to preserve important Civil War breastworks contained within the Blakely site and, to this end, the legislature conferred on the Authority "all powers necessary or convenient to effect the purposes for which it [the Authority] has been established." Ala.Code 1975, § 41-10-175. Inherent in these powers is the authority to control development of the land contained within the park. The four-acre tract of land at issue is located approximately 1.5 miles within the interior of the site, which has now been established as Historic Blakely Park. The tract is cleared, but has no utility connections.
At trial, Authority officer Joanne Flirt testified that the statutory restrictions governing Historic Blakely Park prevented the development or division of the four-acre tract. M.D. Bell, Jr., a certified real estate appraiser licensed by the state, testified that the highest and best use of the property is as a single homesite. He noted that there were several new subdivisions located near the perimeter of the park, and he based his calculations of the tract's value in part on the assumption that utilities would be available. He also stated that the tract at issue was especially attractive because it was private and contained a massive, picturesque oak. He expressed the opinion that, without considering that the land was surrounded by the park, and assuming that utilities could be installed, the fair market value of the land was $30,000.
A second licensed and certified real estate appraiser, Larson Edge, expressed the opinion that the highest and best use of the land would be as a part of the park. He explained that the statute creating the Authority vested it with the power to resist the installation of utilities, to seek rezoning, and to prevent subdivision and development of the tract. Based on the restrictions that the Authority could, and apparently would, impose on the land, he felt that the tract was not a viable place for a single homesite and estimated that the fair market value of the land was only $6,650.
In rebuttal, Williams called Jim Spence, a real estate broker. Spence stated that, based on the premise that the tract could be subdivided and/or developed, its value was $22,500 per acre. Virgil Hollings, a part-owner of the property, testified that he valued the land at $264,000, conditioned on its being divided and sold in parcels.
The Authority argues that the testimony of Spence and Hollings was impermissibly speculative, because it was based on the assumption that the land could be divided. The Authority points out that, in determining just compensation for the owners of condemned property, a jury may consider the uses to which the property is reasonably adapted or may be reasonably adapted at the date of the taking, but that speculative or imaginary uses of the property are not elements for the determination of the value of property. Popwell v. Shelby County, 272 *352 Ala. 287, 130 So.2d 170 (1960). The Authority argues that, on the date of the taking, Williams's land could not be divided because the Act establishing the park was already in effect and the Act permitted the Authority to prohibit a division. The Authority thus concludes that the valuations given by Spence and Hollings were based on imaginary circumstances.
Just compensation to a landowner for condemned property is "the payment of such sum of money to the property owner(s) that the owner(s) would be saved harmless as near as may be, and put in as near the same condition as such owner(s) would have been but for the taking." Alabama Pattern Jury Instructions: Civil, Instruction 14.05 (1993). In a proceeding to determine just compensation, the landowner is entitled to have the value of the property determined based on its highest and best use. State v. Boone, 276 Ala. 16, 158 So.2d 658 (1963). The jury may also compare evidence of the property's value before and after the taking, to determine damages for the devaluation of the land due to the condemnation. Dothan-Houston County Airport Authority, Inc. v. Horne, 292 Ala. 273, 292 So.2d 656 (1974).
Both Spence and Hollings based their valuations of the land upon a use that would, if not for the Act, have been possible and which they considered to be its highest and best use. The Authority's own expert, Bell, also based his valuation on the "highest and best use" of the property as a single family residence, an otherwise possible use of the land that is likewise disallowed under the Act. If these uses were impossible or unreasonable, even without the Act's restrictions, then they could fairly be characterized as "imaginary." There is evidence, however, that the beauty of the land and its proximity to the road could have made its use as a private lot or lots possible, if the Act did not prohibit such a use.
We agree that the jury could consider evidence of values based on what the highest and best use of the land could reasonably have been, without the statutory limitations that were imposed when the property was condemned, in order to determine just compensation and damages. Moreover, it was proper for the jury to consider the expert testimony to establish the difference in the value of the land "before and after" the Act imposed these restrictions and devalued the land by restricting the way in which it could be developed. Horne.

II.
The Authority also argues that the trial court erred to reversal in not ruling on its motion to orally argue the new trial motion. Rule 59(g), Ala.R.Civ.P., does provide that a postjudgment motion "shall not be ruled upon until the parties have had opportunity to be heard thereon." This Court has established, however, that the denial of a postjudgment motion without a hearing thereon is harmless error, where (1) there is either no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court. Greene v. Thompson, 554 So.2d 376 (Ala. 1989).
We agree that the grounds the Authority asserted in its new trial motion were not so meritorious as to require a reversal based on the lack of oral argument regarding those grounds. We also note that these grounds were argued to the trial court in a substantial letter brief, and we conclude that any error in failing to rule on the Authority's motion for oral argument was harmless.
The judgment based on the jury's verdict is hereby affirmed.
AFFIRMED.
MADDOX, ALMON, INGRAM, and COOK, JJ., concur.
HOUSTON and KENNEDY, JJ., dissent.
HOUSTON, Justice (dissenting).
I respectfully dissent.
I would reverse for a new trial on the question of just compensation to be paid to the property owners. The property owners offered no evidence of potential changes in the law that requires Historic Blakely to be *353 maintained as a state historic park. Therefore, any valuation of the subject property based upon a future change in law is totally speculative and clearly beyond the parameters set by this Court in Sayers v. City of Mobile, 276 Ala. 589, 165 So.2d 371 (1964). Testimony of property valuation based on future land use may be considered where the prospect of a repeal or an amendment of an existing permissible use is sufficiently likely, so as to have an appreciable influence upon present market value. Sayers. Such testimony was totally absent in this case, and evidence of valuation for such purposes, properly objected to, is not legally admissible. The jury did not view this land, and there was no admissible evidence that would permit its valuation to stand.