THOMAS, Judge.
Elizabeth J. Henderson (“the wife”) appeals a judgment of the Madison Circuit Court divorcing her from Christopher J. Henderson (“the husband”), dividing the parties’ marital property, and ordering the wife to pay the husband $23,265 as her portion of the pro rata share of the marital expenses incurred during the pendency of the divorce action; specifically, the wife asserts that the trial court erred to reversal by not holding a hearing on her post-judgment motion. We reverse the denial of the wife’s postjudgment motion by operation of law and remand the cause for the trial court to conduct a hearing on that motion.
On May 24, 2010, the husband filed a complaint with the trial court seeking a divorce. On May 26, 2010, the trial court entered a standing pendente lite order that required the parties to continue paying their monthly expenses as they had before the divorce complaint had been filed or based on a pro rata share of the parties’ incomes. On June 8, 2010, the wife filed a pro se answer to the husband’s complaint for a divorce. On June 24, 2010, an attorney filed a notice of appearance on the wife’s behalf in the divorce action. On August 5, 2010, the husband filed a petition for contempt alleging that the wife had failed to pay her portion of the parties’ monthly expenses as ordered in the trial court’s May 26, 2010, pendente lite order. That same day the wife counterclaimed for a divorce; in her verified counterclaim, the wife alleged that she was employed only part time and that she did not have the resources to contribute to the marital expenses as well as her own living expenses. The wife also requested a hearing on the husband’s contempt petition.
On September 20, 2011, the trial court conducted a trial in which it heard ore tenus evidence regarding the divorce and the contempt petition. The husband testified that the parties married on July 5, 2006. He testified that the wife and he had been having marital issues and that, on May 16, 2010, the parties had separated when the wife moved out of the marital residence. The husband testified that he had woken up to a note from the wife on May 15, 2010, indicating that she was going out of town that day. He testified that a coworker, Sandra Hankins, had telephoned him on May 15, 2010, to tell him that she had seen the wife holding a man’s hand at the Memphis in May festival.[1] He further stated that after receiving Han-kins’s telephone call he had packed some of the wife’s belongings and moved them toward the front door of the marital residence. The husband testified that the wife *976 had told him that she had been holding Spencer Holden’s hand at the Memphis in May festival because, she said, men had been harassing her on the street. The husband further testified that Holden was one of the wife’s coworkers and a friend. He said that he had not initially thought that the wife was having an affair with Holden because, he said, he had thought the two had only studied together for the nurse practitioner’s exam. However, the husband testified that, at the time of the trial, he believed that the wife had been having an affair with Holden due to the May 15, 2010, incident and the parties’ joint cellular-telephone bill, which indicated that the wife and Holden had exchanged over 300 text messages per month and numerous telephone calls. He testified that when he had questioned the wife about having an affair with Holden, the wife had always denied that she had had an affair.
The husband testified that, before the parties’ marriage, he had owned the marital residence and a 1995 Acura automobile, which the wife was driving at the time of trial. He also testified that the wife had removed a Bowflex brand exercise machine, a computer desk, and a 32-inch television from the marital residence. He asked that the trial court award him the marital residence, the 1995 Acura automobile, the Bowflex machine, the computer desk, and the 32-inch television. He further testified that although the wife had paid the parties’ Rainsoft home-water-treatment bill for four months after she had moved out of the marital residence, that had been the only contribution to the marital expenses the wife had made since May 2010. He testified that the monthly marital expenses totaled $2,585, and an exhibit itemizing each marital expense was entered into evidence. The exhibit listed the following expenses: mortgage, utility bills, telephone bill, Direct TV bill, Rain-soft bill, Household Financial loan, Red-stone loan, medical bills, credit card bills, cash advances, car insurance, and student loans; the exhibit also indicated that the wife should be held responsible for 50% of those expenses, which equaled $1,292.50. The husband testified that the “Student Loans” category he had listed included only his student-loan payment and not that of the wife. He testified that he had worked two jobs to allow the wife to go back to school to be a nurse practitioner. The husband further testified that the wife had worked only part time as a registered nurse during the parties’ marriage and at the time the parties separated.
The wife testified that the parties had been having marital problems for a long period but that the problems had intensified about a month before the May 16, 2010, separation. She opined that the marital problems were due to the husband’s jealousy issues and sexual issues between the parties. The wife further testified that she had been worried that the husband would “throw” her out of the marital residence for several months before the separation and that she had never felt like the marital residence was her home. She testified that she had not had an affair with Holden, that she had not held his hand at the Memphis in May festival, and that she had not made eye contact with Hankins at the Memphis in May festival. The wife testified that Holden was only her friend and study partner, that she was unaware that he would be at the Memphis in May festival on May 15, 2010, and that she had randomly bumped into him in a restaurant at the Memphis in May festival, although she admitted that she and Holden had exchanged several text messages regarding the Memphis in May festival that morning.
The wife requested that the trial court award her the 1995 Acura automobile, the *977 Bowflex machine, the computer desk, her nursing textbooks, the 32-inch television, and a small filing cabinet. She further stated that she was not seeking an award of the marital residence and that she would like to be responsible for the debts in her name, including her student-loan debt in the amount of approximately $85,000, so long as the husband was responsible for the debts in his name. The wife testified that she had been working part time as a registered nurse and studying to be a nurse practitioner at the time of the parties’ separation. She testified that she had paid the parties’ Rainsoft bill for four months following the parties’ separation and that she had not contributed any other funds toward the marital expenses, although she stated that she was aware of the trial court’s May 26, 2010, pendente lite order. The wife testified that she had lacked the ability to pay her separate living expenses as well as contribute to the husband’s expenses at the time of the separation because, she said, at the time she was only working part time. She further testified that she had taken out a loan in the amount of $8,000 against her 401(k) retirement account in order to provide for her own living expenses after the separation. The wife testified that she had passed the nurse practitioner’s exam in October 2010 and that she had started a full-time job as a nurse practitioner in February 2012. She testified that her monthly net income is $3,800.
Holden testified that he had not been having an affair with the wife, that he did not travel to the Memphis in May festival with the wife, and that he had not held the wife’s hand at the Memphis in May festival. Specifically, he stated that “[the wife] was there, and I was there at the same time.” He testified that his relationship with the wife was just a friendship and that, on the few occasions when the wife had mentioned her marital problems to him, he had referred her to talk to his pastor. He also stated that the numerous text messages and telephone calls between them were due to his helping prepare the wife for the acute-care-nurse-practitioner exam because, he said, he had already passed the exam and was helping her study.
On November 15, 2011, the trial court entered a judgment divorcing the parties, dividing the parties’ marital property, and ordering the wife to pay the husband $23,265 as her pro rata share of the marital expenses incurred during the pendency of the divorce action. On November 30, 2011, the wife filed a postjudgment motion and requested a hearing on her post-judgment motion. The wife’s post-judgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., on February 28, 2012. The wife timely appealed to this court.
The wife raises three issues on appeal: (1) whether the trial court committed reversible error by failing to hold a hearing regarding her postjudgment motion, (2) whether the trial court erred in its interpretation of the pendente lite order, and (3) whether the trial court erred in dividing the parties’ marital property. We find the wife’s first argument to be determinative of the appeal, and, thus, we pretermit discussion of the other issues. See Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court would pretermit discussion of further issues in light of dispositive nature of another issue).
On appeal, the wife argues that the trial court committed reversible error in failing to conduct a hearing on her postjudgment motion. Specifically, the wife contends that the trial court’s error was reversible error because, she says, there was probable merit to her postjudgment motion, and, *978 she argues, the trial court’s failure to hold the hearing regarding the postjudgment motion “injuriously affected substantial rights of the parties.” See Ex parte Evans, 875 So.2d 297, 300 (Ala.2003). The wife asserts four arguments in support of her contentions that her postjudgment motion had probable merit and that the trial court’s failure to hold a hearing on the postjudgment motion injuriously affected her rights. Those arguments are as follows: (1) the evidence presented was insufficient to show what would constitute a pro rata division of the marital expenses; (2) the trial court’s award required the wife to pay a portion of the husband’s student loan although the husband conceded at trial that that was not a marital expense; (3) the trial court’s judgment indicated that the wife owed the husband 18 months of unpaid pendente lite expenses although the case had been pending for only 16 months at the time of trial; and (4) the trial court failed to consider the Rainsoft payments made by the wife during the pendency of the divorce action. We find the wife’s argument regarding the insufficiency of the evidence as to what would constitute a pro rata division of the marital expenses to be determinative of the appeal.
In this case, the record indicates that the wife filed a timely postjudgment motion raising her insufficiency-of-the-evidence arguments and that the wife requested a hearing on her postjudgment motion. The record further indicates that the trial court failed to conduct a hearing regarding the postjudgment motion, and, thus, the motion was denied by operation of law pursuant to Rule 59.1.
“Rule 59(g)[, Ala. R. Civ. P.,] provides that posttrial motions ‘remain pending until ruled upon by the court (subject to the provisions of Rule 59.1), but shall not be ruled upon until the parties have had opportunity to be heard thereon.’ The failure to hold a hearing on a posttrial motion is not always reversible error, however. Our supreme court has stated:
“ ‘ “[I]f a party requests a hearing on its motion for a new trial, the court must grant the request.” Ex parte Evans, 875 So.2d 297, 299-300 (Ala.2003) (citing Rule 59(g), Ala. R. Civ. P., and Walls v. Bank of Prattville, 554 So.2d 381, 382 (Ala.1989)). Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. “This Court has established, however, that the denial of a post-judgment motion without a hearing thereon is harmless error, where (1) there is ... no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.” Historic Blakely Auth. v. Williams, 675 So.2d 350, 352 (Ala.1995) (citing Greene v. Thompson, 554 So.2d 376 (Ala.1989)).’
“Chism v. Jefferson County, 954 So.2d 1058, 1086 (Ala.2006).”
Cunningham v. Edwards, 25 So.3d 475, 477 (Ala.Civ.App.2009). We agree with the wife that the failure of the trial court to hold a hearing on her postjudgment motion was error. The issue becomes whether such error was reversible error. As the wife’s appellate brief correctly notes, “[ujnder Rule 45, Ala. R.App. P., the failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it ‘probably injuriously affected substantial rights of the parties.’ ” Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala.1993) (footnote omitted) (quoting Rule *979 45, Ala. R. Civ. P., and citing Greene v. Thompson, 554 So.2d 376, 380-81 (Ala.1989), and Walls v. Bank of Prattville, 554 So.2d 381, 382 (Ala.1989)). “If the failure to conduct a hearing did not ‘ “injuriously affeet[ ] [the] substantial rights of the parties,” ’ that failure, while error, was harmless.” DWOC, LLC v. TRX Alliance, Inc., 99 So.3d 1233, 1236 (Ala.Civ.App.2012).
As noted above, the wife’s postjudgment motion contained several arguments asserting that the trial court’s judgment was due to be reversed because, the wife contended, the portion of the judgment ordering the wife to pay the husband $23,265 as her portion of the pro rata share of the marital expenses during the pendency of the divorce action was unsupported by the evidence. Specifically, the provision of the trial court’s judgment at issue in this appeal states: “The [wife] shall pay to the [husband] her Pro Rata share of the marital home bills from the time the case was filed in the amount of $1292.50 per month for 18 months.”
The wife contends that that portion of the judgment is unsupported by the evidence because there was no testimony indicating the amount of the husband’s income to support a determination by the trial court of her pro rata share of the marital expenses and that the judgment does not credit her for paying the Rainsoft bill despite her undisputed testimony that she had paid the Rainsoft bill for four months after the separation. After a careful review of the record on appeal, we agree with the wife that there was probable merit to her arguments. The record is devoid of any testimony regarding the husband’s income, and the testimony regarding the wife’s payment of the Rainsoft bill for four months following the parties’ separation was undisputed. Thus, we conclude that the trial court’s failure to hold a hearing on the wife’s postjudgment motion probably injuriously affected the wife’s substantial rights.
Accordingly, we determine that, under the facts presented in this case, the trial court erred in failing to conduct a hearing regarding the wife’s postjudgment motion and that any error in failing to conduct a hearing was not harmless error. Thus, we reverse the denial of the wife’s post-judgment motion by operation of law, and we remand the cause to the trial court to conduct a hearing on the issues raised in the wife’s postjudgment motion. See Isbell v. Rogers Auto Sales, 72 So.3d 1258, 1262 (Ala.Civ.App.2011).
The parties’ requests for attorneys’ fees on appeal are denied.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Hankins also testified at trial. Her short testimony indicated that she had clearly seen the wife holding a man’s hand at the Memphis in May festival on May 15, 2010. She further testified that she had made eye contact with the wife and that after they had made eye contact the wife "ducked” into a restaurant out of Hankins’s line of sight while still holding the man’s hand.