THOMPSON, Presiding Judge.
James Driggers ("the father") appeals from a judgment divorcing him from Loryn Driggers ("the mother"), awarding the parties joint legal custody of their child ("the child"), and awarding the mother sole physical custody of the child subject to the father's visitation rights.
The statement of the facts the father included in his appellate brief is less than two pages. Although he includes additional facts in the argument portion of his brief, those facts support his contentions on appeal and are not part of a full, narrative rendition of facts as required by Rule 28(a)(7), Ala. R. App. P. This court has studied the full record on appeal. The evidence adduced during the May 16, 2016, trial of this case tends to show the following. The parties married on February 4, *603 2011.[1] They separated four years later, on September 26, 2015, and the mother filed a complaint for a divorce. The child was six years old at the time of the trial. The father had custody of a child from a previous relationship ("the half sister") who was 14 years old at the time of the trial. Evidence indicated that the child missed the half sister when she was away from her.
The mother testified that, at the time of the trial, she worked at a dentist's office as the "front desk coordinator" earning $12.50 an hour. She also worked at a restaurant at night on occasion. She said that she was usually home by 9:00 or 9:30 p.m. those nights, depending on how crowded the restaurant was. The mother testified that, after the father and she separated, she only "filled in" at the restaurant occasionally. During the parties' marriage, the mother had held several jobs, including working for Hyundai Motor Manufacturing of Alabama ("Hyundai") and for a local automobile dealership. The mother acknowledged that her job with Hyundai was terminated after she was involved in a physical altercation with another employee. She said that she had worked at the automobile dealership for "a week or so."
The father testified that he earns approximately $98,000 annually but that his income fluctuates. He works as an assistant manager of the body shop at the Hyundai plant. In that position, the father is required to rotate his work schedule among the three shifts at the plant. He said that when he works first shift, his hours are from 6:15 a.m. to 3:00 p.m. His hours on second shift are from 2:15 p.m. to 11:00 p.m.; third shift hours are from 10:15 p.m. to 7:00 a.m. The mother testified that the father worked between 11 and 12 hours each day, regardless of which shift he was working. The mother testified that the father's working hours, as well as his need to sleep during the day when the child would be with him, was a primary reason for her belief that she should have custody of the child.
The mother testified that she was the child's primary caretaker. For example, the mother said, she was the parent who took the child to doctors' appointments. The mother also said that, before the parties separated, the father was either at work or asleep during much of the child's waking hours. She also asserted that, when he worked second shift, the father would leave work early enough to go out and sing at a karaoke bar as often as three nights a week rather than come home to spend time with the family.
The father testified that he enjoyed singing karaoke but that he went out to do so only once a week when his work hours permitted. He said that, because the parties were sharing custody, he had spent much more time with the child since the parties had separated. He said that he had always enjoyed spending time with the child and that, when his work schedule had allowed, he had bathed the child and put her to bed.
The parents conceded that they had different parenting styles. The mother described herself as a disciplinarian. The father disagreed with the mother's stricter approach with the child. A neighbor who testified on behalf of the father said that she had seen the mother discipline the child. Although she would not characterize the mother's discipline as "inappropriate," the neighbor did say that the mother was more "stern" with the child than was the father.
*604 The father testified that the mother had anger and honesty issues. In addition to the evidence regarding the circumstances surrounding the termination of the mother's employment with Hyundai, the father elicited evidence indicating that, in 2005, when the mother was a minor, she was arrested for writing a worthless check. It is unclear whether she was convicted of that offense. In 2010 or 2011, the mother said, she was arrested for theft of property in connection with a deposit that had not been made at the business she had worked for years earlier. The mother denied that she had played any role in the missing money and stated that the charge had been dismissed. The father also presented evidence indicating that, since the parties' separation, the mother had been involved in an altercation at a bar one night. The details of the altercation were disputed, but the fight was between the mother and a woman with whom, the mother said, she believed the father was having an affair. The father was not present at the time.
The father testified that he wanted to have custody of the child half of the time. If that was not possible, he said, he wanted sole physical custody of the child. He said that he had people ready and willing to help him with the child when he had to work. When he worked first shift, the father testified, he would wake the child up at 5:30 a.m. "and get her started." He also said that, when he had to work third shift, he was willing to take the child to the mother's house before he left for work so that the child could go to bed, then awaken and prepare for school at the mother's house.
The father remains in the marital residence; the mother has moved to a nearby town. No evidence was presented regarding where the child attended school, the amount of time she had to travel from each party's house to reach the school, or other similar topics.
The guardian ad litem, who the father had asked to be appointed to represent the child, recommended to the trial court that the mother "be vested with primary physical custody" of the child. In support of his recommendation, the guardian ad litem stated that the father's "work schedule makes it extremely difficult for him to personally provide primary physical custody." He also noted that the parties had an "inability to co-parent" and that, therefore, joint physical custody would be highly unlikely to succeed. The guardian ad litem also recommended that the father be granted "extremely liberal visitation" with the child.
On June 10, 2016, the trial court entered the judgment divorcing the parties. On the issues involving custody, the trial court awarded the parties joint legal custody of the child "and [ordered] that primary physical custody of [the] child" be vested with the mother, subject to the award of standard visitation to the father. The trial court made clear that, in light of the father's custody of the half sister and his work schedule, the parties could mutually agree to "formally adjust the schedule of visitation" within 30 days of the entry of the judgment and that the trial court would "consider amending the schedule" to the mutually agreeable schedule.
The trial court went on to state the following in the judgment:
"The parties are admonished that joint legal custody of [the] child established in each party co-equal responsibility for decisions regarding major areas which touch upon the health, education, moral development, and welfare of [the] child. Each party shall have the opportunity to provide meaningful input into those areas and shall be entitled to receive and/or inspect any and all records which *605 contain information relative to the child. Such records may include, but are not limited to, medical records, education records, and report cards. The father shall receive reasonable notice of, and opportunity to attend and/or participate in, any and all activities in which the child becomes involved.
"(a) In the event the parents are unable to reach a mutual agreement concerning areas which touch upon the health, education, moral development, and welfare of the child, the [mother] is vested with the final decision-making authority which she shall exercise only after full and fair consideration of the [father's] ideas, opinions, and input."
The father filed a timely motion to alter, amend, or vacate the judgment, raising a number of issues. In the motion, the father requested a hearing. The mother and the guardian ad litem both responded to the motion. The trial court never ruled on the father's postjudgment motion, which was deemed denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The father then appealed.
On appeal, the father argues that the trial court erred by failing to hold a hearing on his motion to alter, amend, or vacate the judgment.
" 'Rule 59(g)[, Ala. R. Civ. P.,] provides that posttrial motions "remain pending until ruled upon by the court (subject to the provisions of Rule 59.1 ), but shall not be ruled upon until the parties have had opportunity to be heard thereon." The failure to hold a hearing on a posttrial motion is not always reversible error, however. Our supreme court has stated:
" ' " '[I]f a party requests a hearing on its motion [filed pursuant to Rule 59, Ala. R. Civ. P.], the court must grant the request.' Ex parte Evans, 875 So.2d 297, 299-300 (Ala. 2003) (citing Rule 59(g), Ala. R. Civ. P., and Walls v. Bank of Prattville, 554 So.2d 381, 382 (Ala. 1989) ). Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. 'This Court has established, however, that the denial of a postjudgment motion without a hearing thereon is harmless error, where (1) there is ... no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.' Historic Blakely Auth. v. Williams, 675 So.2d 350, 352 (Ala. 1995) (citing Greene v. Thompson, 554 So.2d 376 (Ala. 1989) )."
" ' Chism v. Jefferson County, 954 So.2d 1058, 1086 (Ala. 2006).'
" Cunningham v. Edwards, 25 So.3d 475, 477 (Ala. Civ. App. 2009).... The issue then becomes whether such error is reversible. Error 'is reversible error only if it "probably injuriously affected substantial rights of the parties." ' Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala. 1993) (quoting Rule 45, Ala. R. Civ. P., and citing Greene v. Thompson, 554 So.2d 376, 380-81 (Ala. 1989), and Walls v. Bank of Prattville, 554 So.2d 381, 382 (Ala. 1989) ). 'If the failure to conduct a hearing did not " 'injuriously affect[ ] [the] substantial rights of the parties,' " that failure, while error, was harmless.' DWOC, LLC v. TRX Alliance, Inc., 99 So.3d 1233, 1236 (Ala. Civ. App. 2012) (quoting Kitchens, 623 So.2d at 1088 )."
Frazier v. Curry, 119 So.3d 1195, 1197-98 (Ala. Civ. App. 2013).
*606 In his postjudgment motion, and again in his appellate brief, the father argued that the trial court erred in not allowing him the opportunity to question the guardian ad litem after the guardian ad litem submitted his report and recommendations to the trial court. The record demonstrates that the guardian ad litem's report was submitted to the trial court after the trial was completed. In its judgment, the trial court stated that it had "given considerable weight to the report and opinion of the Guardian ad litem" when making its findings of fact and its custody determination.
In Ex parte R.D.N., 918 So.2d 100, 104-05 (Ala. 2005) (footnotes omitted), our supreme court addressed a similar issue, stating:
"The guardian ad litem's recommendation that the child remain with the mother was not presented as evidence produced in open court and was based on information that may or may not have been properly presented to the court. As a result, the father was denied the opportunity to respond with rebuttal evidence and to present reasons why the recommendation of the guardian ad litem should not be followed. The mother was also denied the opportunity to respond and present reasons why the guardian ad litem's recommendation should be followed.
"The guardian ad litem made no recommendation on the record either by testimony or in a written report before or during the July 2002 hearing. The guardian ad litem apparently formed and expressed her opinion on the merits before the case was presented on the merits and stated conclusions openly hostile to the father's position. There is no evidence in the record indicating that the guardian ad litem had any recognized qualifications that demonstrated that she had a unique ability to make a recommendation on child custody. Consequently, the right to contest the accuracy, substance, impartiality, and quality of the guardian ad litem's recommendation to the court concerning the custody of the child was a procedural right denied the father in this case."
See also Cooper v. Cooper, 160 So.3d 1232, 1243 (Ala. Civ. App. 2014) (noting that "the guardian ad litem's recommendation was presented to all parties at trial and the parties were afforded the opportunity to contest the recommendation," which distinguished the case from Ex parte R.D.N., supra) ; K.U. v. J.C., 196 So.3d 265, 273 n.3 (Ala. Civ. App. 2015) (distinguishing Ex parte R.D.N., supra, because the guardian ad litem's recommendation was not made ex parte and no party objected to the submission of the written recommendation); and C.J.L. v. M.W.B., 879 So.2d 1169 (Ala. Civ. App. 2003) (distinguished in Ex parte R.D.N., 918 So.2d at 103, because "the recommendations of the guardian ad litem were before the court and were contested during the trial on the merits," as opposed to being submitted to the court ex parte).
In this case, the guardian ad litem's recommendation that the mother be vested with "primary physical custody" was not presented as evidence. The guardian ad litem asked questions of witnesses, but he did not serve as a witness himself. The father was not given an opportunity to challenge the guardian ad litem's report, findings, impartiality, or recommendations. Thus, we conclude that the trial court's denial of the father's postjudgment motion injuriously affected the father's substantial rights, and, therefore, the denial of a hearing on the motion was not harmless. The trial court erred to reversal by not holding such a hearing.
The father also asserted in his postjudgment motion and on appeal that *607 the trial court erred by not allowing the father to present all of his witnesses during the trial.[2] In his brief on appeal, the father cites no authority and makes no legal argument to demonstrate that the trial court erred in denying him the opportunity to present additional evidence after the judgment was entered.
" 'It is the appellant's burden to refer this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. R. App. P., requires that the argument in an appellant's brief include "citations to the cases, statutes, [and] other authorities ... relied on." Consistent with Rule 28, "[w]e have stated that it is not the function of this court to do a party's legal research." Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala. 1992) (citing Henderson v. Alabama A & M University, 483 So.2d 392, 392 (Ala. 1986) (" 'Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.' Gibson v. Nix, 460 So.2d 1346, 1347 (Ala. Civ. App. 1984).")).'
" Board of Water & Sewer Comm'rs of City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1254 (Ala. 2009)."
McConico v. Patterson, 204 So.3d 409, 419 (Ala. Civ. App. 2016). The father has failed to demonstrate that the denial of his postjudgment motion as to this issue injuriously affected his substantial rights.
Because the trial court erred in not holding a hearing on the father's postjudgment motion, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion. Consequently, consideration of issues the father raised on appeal that are not addressed in this opinion are pretermitted.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

The child was born before the parties married. There is no dispute regarding the child's paternity.

Although the father states in his appellate brief that this issue was raised before the trial court during the trial, the record does not reflect that such a discussion or objection took place. "An error asserted on appeal must be affirmatively demonstrated by the record, and if the record does not disclose the facts upon which the asserted error is based, such error may not be considered on appeal." Martin v. Martin, 656 So.2d 846, 848 (Ala. Civ. App. 1995).